U.S. DISTRICT COURT
FOR CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CHEMTREAT, INC. a Virginia corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No.  05 CV 1336 |
| GREGORY P. KINSMAN, and MICHELLE M. KINSMAN, individually and d/b/a REMA CHEMICALS, | ) ) ) ) ) |
| Defendants. | ) |

**MOTION FOR PRELIMINARY INJUNCTION**

NOW COMES CHEMTREAT, INC., a Virginia corporation ("CHEMTREAT") by its attorneys, Cassidy & Mueller, and for its Motion for Preliminary Injunction against the Defendants, GREGORY P. KINSMAN and MICHELLE M. KINSMAN, individually, and d/b/a/ REMA CHEMICALS state as follows:

**APPLICABLE LAW**

1.     The decision to grant or deny preliminary injunctive relief lies within the sound discretion of the trial court. Mallard Maintenance Service Company v. Bernero, 207 Ill.App.3d 736, 643, 566 N.E.2d 379, 383 (1st Dist. 1990). A party requesting a preliminary injunction must demonstrate: (1) a clearly ascertained right in need of protection; (2) irreparable harm in the absence of an injunction; (3) no adequate remedy at law for the injury; and (4) the likelihood of success on the merits. Sarah Bush Lincoln Health Center v. Perket, 238 Ill.App.3d 958 (4th Dist. 1992).

2.     The present case involves Defendant's violation of various aspects of his Employment Agreement with CHEMTREAT, including restrictive covenants.

3.  Restrictive covenants serve a real and measurable social utility in that they protect the employer from unwarranted erosion of either confidential information or the loss of the goodwill of its business. <u>Tower Oil & Tech Company v. Buckley</u>, 99 Ill.App.3d 637 (1st Dist. 1981). In order for restrictive covenants in employment contracts to have anything but a hollow meaning, they must be enforced where equitable. <u>Shorr Paper Products, Inc. v. Frary</u>, 74 Ill.App.3d 498 (2nd Dist. 1979). The determination as to whether a restrictive covenant is enforceable is a question of law. <u>Woodfield Group, Inc. v. DeLisle</u>, 295 Ill.App.3d 935 (1st dist. 1998). A post employment restrictive covenant will be enforced if it is necessary to protect a legitimate business interest of the employer and is reasonable in scope. <u>Woodfield Group, Inc.</u>, 295 Ill.App.3d at 938.

## **GREGORY P. KINSMAN**

4.  As alleged in Plaintiff's Complaint, GREGORY KINSMAN was at all relevant time an employee of CHEMTREAT pursuant to a valid and enforceable Employment Agreement entered into on August 17, 1995. The Employment Agreement provides, in relevant part, as follows:

> The parties hereto acknowledge that CHEMTREAT is engaged in the business of the sale of equipment and chemical formulations for treatment of boilers, cooling towers, heating and cooling systems, raw water and waste water systems and the sale of fuel oil treatments in providing service activities incident to the sale of the above products. Employee hereby acknowledges that during the course of his employee he has or will receive or have access to certain confidential and proprietary information which is essential to the sales and service activities of CHEMTREAT including, but not limited to, selling methods, price sheets and product manuals. Employee hereby further acknowledges that the customers of CHEMTREAT constitute a valuable asset to CHEMTREAT and that CHEMTREAT has legitimate business interest to protect by the restrictions contained herein.
>
> During the eighteen (18) month period following the effective date of termination by either party of the employment relationship created

hereunder, employee shall not in his own name, or as a consultant, or in any other capacity on behalf of any other person or entity solicit, call upon, communicate with, enter into any sales or servicing agreements with, or attempt to communicate with any CHEMTREAT customer or prospective customer, as defined herein, for the purpose of selling, offering for sale, influencing the purchase of or otherwise providing any product, service or equipment competitive with any product, service or equipment then sold, offered for sale, provided, or under development by CHEMTREAT.

For purposes of this Agreement, "customer" shall mean any person or entity that is a customer of (CHEMTREAT) or any representative of such person or entity, with whom employee had any contact, communication, or for which employee had supervisory, sales or service responsibility during any of the eighteen (18) consecutive calendar months preceding the effective date of termination of his CHEMTREAT employment. For the purposes of this Agreement, prospective "customer" shall mean any person or entity, or representative of such person or entity, for which employee performed or participated in a survey or written proposal during the twelve (12) consecutive calendar months preceding termination of employment with CHEMTREAT.

5. Further, the Employment Agreement contains a Trade Secrets and Confidentiality Agreement - which has been executed by all parties - and which provides, in relevant part, as follows:

> I recognize that the corporation has a substantial investment in its development and use of commercially valuable technical and non-technical information which the corporation desires to protect by patents or by holding such information secret or confidential. Such proprietary information is vital to the success of the corporation's business. I also recognize that during my employment, I will receive, develop or otherwise acquire such secret or confidential technical and non-technical information. Except as authorized in writing by the corporation, I will not disclose to persons not employed by the corporation or to those persons employed by the corporation to whom disclosure has not been previously approved by the president or any vice president of the corporation, or use directly, indirectly, during or after my employment with the corporation any information of the corporation I obtained during the course of my employment relating to inventions, products, product specifications, processes, procedures, prices, discounts, manufacturing costs, business affairs, future plans, technical data, customer lists …, product formulations, marketing techniques and cost data.

3

6.  As alleged in Plaintiff's Complaint, GREGORY KINSMAN has breached his Employment Agreement and the Confidentiality Agreement by:

   A. Creating a chemical business, REMA, in conjunction with his wife for the sole purpose of competing with CHEMTREAT in his sales region;

   B. Engaging himself in the competing business of REMA for the material benefit of himself and his wife;

   C. Calling upon existing customers of CHEMTREAT, during his employment with CHEMTREAT, for the purpose of diverting those customers to REMA;

   D. Calling upon prospective customers of CHEMTREAT, while still employed by CHEMTREAT, for the purpose of diverting their business to REMA;

   E. Disclosing proprietary and technical product specifications to outside chemical distributors for the purpose of filling orders for the diverted customers; and

   F. Generally conspiring to create an operating business and divert CHEMTREAT customers for his own financial benefit.

7.  CHEMTREAT has a clearly ascertainable right in need of protection in that:

   A. Its products and services are of a highly technical nature requiring extensive technical expertise not only from its laboratory and corporate technical staff but also its field sales personnel;

   B. The product formulations of CHEMTREAT are extremely valuable assets of the company for which it derives significant competitive advantage in the market place;

   C. Its customers are a valuable and important asset that the company goes to great lengths to procure and maintain longstanding relationships with; and

   D. CHEMTREAT maintains strict confidentiality of its proprietary product formulations which are not generally disclosed other than to certain trusted employees.

8.  CHEMTREAT will suffer irreparable harm in the absence of inconjunctive relief during the pendency of this matter in that disclosure of its confidential proprietary information

has the potential to destroy the competitive advantage that CHEMTREAT enjoys from its product line. The value of the proprietary information is not subject to ready valuation and the diversion of customers constitutes an ongoing violation of the restrictive covenants.

9. There would be no adequate remedy at law for the injury sustained in that the value of the business loss and of the information improperly disclosed is not subject to ready valuation.

10. Wrongful conduct of GREGORY P. KINSMAN has been documented and his well known among CHEMTREAT'S former customers and thus, there is a likelihood of success on the merits.

## MICHELLE M. KINSMAN, INDIVIDUALLY AND D/B/A REMA CHEMICALS

11. MICHELLE KINSMAN is the wife of GREGORY P. KINSMAN.

12. As alleged in the Complaint, the competing business, REMA, was established in the name of MICHELLE KINSMAN, in a transparent attempt to circumvent her husband's legal restrictions on engaging in a competing business with CHEMTREAT.

13. MICHELLE KINSMAN is nothing more than a "straw person" for the operation of the competing business, the profits of which directly benefit GREGORY P. KINSMAN in violation of his Employment Agreement, restrictive covenants and applicable law and thus, it would be inequitable to allow her to continue to compete during the pendency of this matter.

WHEREFORE, Plaintiff, CHEMTREAT, INC., a Virginia corporation, requests that this Court grant the following relief:

1. Entry of a preliminary injunction against Defendant, GREGORY P. KINSMAN, as follows:

    a. Enjoining Defendant from soliciting, calling upon, communicating with, entering into any sales or servicing agreements with, or attempting to

        communicate with any person or entity that is a customer of CHEMTREAT (or any representative of such person or entity) with whom Defendant had any contact, communication, or for which he had supervisory, sales or service responsibility during any of the eighteen (18) consecutive calendar months preceding his termination of employment with CHEMTREAT for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, service or equipment competitive with any product, service or equipment sold, offered for sale, provided or under development by CHEMTREAT, either for his own benefit or on behalf of any other person or entity;

    b.    Enjoining Defendant from soliciting, calling upon, communicating with, entering into any sales or servicing agreements with, or attempting to communicate with any person or entity (a representative of such entity) for which Defendant performed or participated in a survey or written proposal during the twelve (12) consecutive calendar months preceding his termination of employment with CHEMTREAT for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, service or equipment competitive with any product, service or equipment sold, offered for sale, provided or under development by CHEMTREAT, either for his own benefit or on behalf of any other person or entity;

    c.    Enjoining Defendant, GREGORY P. KINSMAN, from disclosing to any persons or entities any information relating to inventions, products, product specification, processes, procedures, prices, discounts, manufacturing costs, business affairs, future plans, technical data, customer lists, product formulations, marketing techniques and cost data received or learned by him during his course of his employment with CHEMTREAT;

    d.    Enjoining Defendant, GREGORY P. KINSMAN, from engaging in any business or other endeavor in competition with CHEMTREAT; and

2.    Entering a preliminary injunction against Defendant, MICHELLE M. KINSMAN, individually and d/b/a REMA CHEMICALS as follows:

    a.    Enjoining her from soliciting, calling upon, communicating with, entering into any sales or servicing agreements with, or attempting to communicate with any person or entity that is a customer of CHEMTREAT (or any representative of such person or entity) with whom GREGORY P. KINSMAN had any contact, communication, or for which he had supervisory, sales or service responsibility during any of the eighteen (18) consecutive calendar months preceding his termination of employment with CHEMTREAT for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, service or

        equipment competitive with any product, service or equipment sold, offered for sale, provided or under development by CHEMTREAT, either for her own benefit or on behalf of any other person or entity;

    b.    Enjoining her from soliciting, calling upon, communicating with, entering into any sales or servicing agreements with, or attempting to communicate with any person or entity (a representative of such entity) for which GREGORY P. KINSMAN performed or participated in a survey or written proposal during the twelve (12) consecutive calendar months preceding his termination of employment with CHEMTREAT for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, service or equipment competitive with any product, service or equipment sold, offered for sale, provided or under development by CHEMTREAT, either for her own benefit or on behalf of any other person or entity;

    c.    Enjoining her from disclosing to any persons or entities any information relating to inventions, products, product specification, processes, procedures, prices, discounts, manufacturing costs, business affairs, future plans, technical data, customer lists, product formulations, marketing techniques and cost data received or learned by GREGORY P. KINSMAN during the course of his employment with CHEMTREAT;

    d.    Enjoining her from engaging in any business or other endeavor in competition with CHEMTREAT; and

3.    For such other and further injunctive relief as the Court deems just and proper.

                              CASSIDY & MUELLER

                        By: s/ Andrew D. CASSIDY
                              Attorneys for the Plaintiff,
                              CHEMTREAT, INC., a Virginia corporation

Andrew D. Cassidy
CASSIDY & MUELLER
323 Commerce Bank Bldg.
416 Main Street
Peoria, Illinois 61602