E-FILED
Monday, 07 November, 2005 02:53:30 PM
Clerk, U.S. District Court, ILCD

U.S. DISTRICT COURT
FOR CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| CHEMTREAT, INC. a Virginia corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 05 CV 1336 |
| GREGORY P. KINSMAN, and MICHELLE M. KINSMAN, individually and d/b/a REMA CHEMICALS, | ) ) ) ) ) | |
| Defendants. | ) | |

**MOTION FOR TEMPORARY RESTRAINING ORDER**

NOW COMES CHEMTREAT, INC., a Virginia corporation ("CHEMTREAT") by its attorneys, Cassidy & Mueller, and for its Motion for a Temporary Restraining Order against the Defendants, GREGORY P. KINSMAN, and MICHELLE M. KINSMAN, individually and d/b/a REMA CHEMICALS states as follows:

1.  CHEMTREAT repeats, re-alleges and incorporates all of the allegations in its Motion for Preliminary Injunction filed contemporaneously herewith as and part of its Motion for Temporary Restraining Order.

2.  Attached hereto and made a part hereof as Exhibit A is a true and correct Affidavit of Randall L. Azzarello, Executive Vice President and Chief Operating Officer of CHEMTREAT.

3.  CHEMTREAT'S Complaint in this cause establishes that it has a clearly ascertainable interest in need of protection and that GREGORY KINSMAN intentionally and maliciously breached his Employment Agreement by creating a competing company to engage in

direct competition with CHEMTREAT. In so doing, KINSMAN has misappropriated his use and knowledge of the business, its customers, proprietary information and trade secrets of CHEMTREAT.

4.Unless Defendants are enjoined from their continued disclosure of proprietary and confidential information and their direct competition with CHEMTREAT, including the intentional diversion of CHEMTREAT customers for their own benefit, CHEMTREAT will suffer irreparable injury for which it has no adequate remedy at law.

5.Injunctive relief is reasonably necessary for the protection of CHEMTREAT'S interests and will not unreasonably prejudice Defendants. CHEMTREAT has a likelihood of success on the merits of its cause of action against Defendants.

WHEREFORE, Plaintiff, CHEMTREAT, INC. a Virginia corporation, prays for an Order temporarily restraining the Defendants, GREGORY P. KINSMAN, and MICHELLE M. KINSMAN, individually and d/b/a REMA CHEMICALS, from:

a.Enjoining Defendants from soliciting, calling upon, communicating with, entering into any sales or servicing agreements with, or attempting to communicate with any person or entity that is a customer of CHEMTREAT (or any representative of such person or entity) with whom Defendant had any contact, communication, or for which he had supervisory, sales or service responsibility during any of the eighteen (18) consecutive calendar months preceding his termination of employment with CHEMTREAT for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, service or equipment competitive with any product, service or equipment sold, offered for sale, provided or under development by CHEMTREAT, either for his own benefit or on behalf of any other person or entity;

b.Enjoining Defendants from soliciting, calling upon, communicating with, entering into any sales or servicing agreements with, or attempting to communicate with any person or entity (a representative of such entity) for which Defendants performed or participated in a survey or written proposal during the twelve (12) consecutive calendar months preceding his termination of employment with CHEMTREAT for the purpose of selling, offering for sale, influencing the purchase of, or otherwise

      providing any product, service or equipment competitive with any product, service or equipment sold, offered for sale, provided or under development by CHEMTREAT, either for his own benefit or on behalf of any other person or entity;

    c.    Enjoining Defendants from disclosing to any persons or entities any information relating to inventions, products, product specification, processes, procedures, prices, discounts, manufacturing costs, business affairs, future plans, technical data, customer lists, product formulations, marketing techniques and cost data received or learned by him during his course of his employment with CHEMTREAT;

    d.    Enjoining Defendants from engaging in any business or other endeavor in competition with CHEMTREAT; and

3.    For such other and further injunctive relief as the Court deems just and proper.

                              CASSIDY & MUELLER

                              By: s/ Andrew D. CASSIDY
                              Attorneys for the Plaintiff,
                              CHEMTREAT, INC., a Virginia corporation

Andrew D. Cassidy
CASSIDY & MUELLER
323 Commerce Bank Bldg.
416 Main Street
Peoria, Illinois 61602

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

CHEMTREAT, INC.,

    Plaintiff,

v.

GREGORY P. KINSMAN, and
MICHELLE M. KINSMAN, individually
and d/b/a REMA CHEMICALS.

    Defendants.

**AFFIDAVIT OF RANDALL L. AZZARELLO IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION**

COMMONWEALTH OF VIRGINIA

COUNTY OF HENRICO, to-wit:

  Randall L. Azzarello, being first duly sworn, states as follows:

  1. I am, and at all times relevant hereto have been, employed by ChemTreat, Inc. ("ChemTreat") as Executive Vice President and Chief Operating Officer. In the course of my responsibilities with ChemTreat, I have personal familiarity with the matters set forth herein.

  2. ChemTreat is a Virginia corporation with its home office located at 4461 Cox Road, Glen Allen, Virginia. ChemTreat supplies proprietary industrial water treatment products and attendant services to approximately 7,000 locations in North America, most of which are large manufacturing, institutional or industrial facilities or large commercial office towers. ChemTreat principally supplies the products, services and expertise to maintain the heating and cooling water systems within the physical plants of its customers and process treatment applications of its customers.

3.      ChemTreat currently employs approximately 551 people in the United States and 14 persons elsewhere in North America. ChemTreat's product line consists of approximately 1,200 proprietary products which it has developed since the company was established in 1968. To develop, refine and preserve its product line, ChemTreat maintains a fully staffed Research and Development Department, which currently consists of approximately 20 persons. That department creates all of the company's proprietary product formulations for use in its water treatment services.

4.      The products and services provided by ChemTreat are of a highly technical nature requiring extensive technical expertise not only from its laboratory and corporate technical staff but also its field sales personnel. Most ChemTreat salesmen are chemists, biologists or chemical engineers by training.

5.      The product formulations of ChemTreat are extremely valuable assets of the Company from which it derives significant competitive advantage in the marketplace. ChemTreat's unique and proprietary formulations are a cornerstone of the comprehensive water treatment services ChemTreat provides for its customers.

6.      Since its inception, ChemTreat has pursued an intentional market strategy of maintaining the strict confidentiality of its product formulary through the protection of trade secret laws rather than patent protection. Accordingly, ChemTreat goes to great lengths to protect its proprietary formulations.

7.      In addition, ChemTreat's customers are a valuable and important asset of the Company, and ChemTreat goes to great lengths to provide optimum service for its customers and to maintain longstanding relationships with those customers.

8.   All technical staff, field personnel and corporate staff are required to sign a Trade Secrets and Confidentiality Agreement as a condition of employment with the Company. Pursuant to the Trade Secrets and Confidentiality Agreement, the employees agree to hold all proprietary company information in strict confidence.

9.   Gregory P. Kinsman ("Kinsman") was hired as a sales representative for ChemTreat and entered into an Employment Agreement (the "Employment Agreement") with ChemTreat on August 17, 1995.

10.   The Employment Agreement provides, among other things, that during the period of his employment, Kinsman would "not engage in any other business, either for himself or for the account of any other person, firm or corporation without the prior consent of the Board of Directors of CHEMTREAT."

11.   The Employment Agreement also contains the following non-solicitation provision:

> During the eighteen (18) month period following the effective date of termination by either party of the employment relationship created hereunder, Employee shall not in his own name, or as a consultant, or in any other capacity on behalf of any other person or entity solicit, call upon, communicate with, enter into any sales or servicing agreements with, or attempt to communicate with any CHEMTREAT customer or prospective customer, as defined herein, for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, service or equipment competitive with any product, service or equipment then sold, offered for sale, provided or under development by CHEMTREAT.

12.   The Employment Agreement further provides:

> For the purposes of this Agreement, "customer" shall mean any person or entity that is a customer of CHEMTREAT … with whom Employee had any contact, communication, or for which Employee had supervisory, sales or service responsibility during any of the eighteen (18) consecutive calendar months preceding the effective date of termination of his CHEMTREAT employment.

13. Also on August 17, 1995 and in conjunction with the Employment Agreement, Kinsman entered into a Trade Secrets and Confidentiality Agreement (the "Confidentiality Agreement") in the form presented to all technical staff, field personnel and corporate staff.

14. The Confidentiality Agreement provides, among other things, that Kinsman would not disclose or use any information he obtained during the course of his employment with ChemTreat. Specifically, the Confidentiality Agreement provides, in pertinent part, as follows:

> I [Kinsman] will not disclose to persons not employed by the Corporation [ChemTreat, Inc.] or to those persons employed by the Corporation to whom disclosure has not been previously approved by the president or any vice president of the Corporation, or use directly or indirectly, during or after my employment with the Corporation, any information of the Corporation I obtain during the course of my employment relating to inventions, products, product specifications, processes, procedures, prices, discounts, manufacturing costs, business affairs, future plans, technical data, customer lists (customer lists to include among other things customer requirements, products purchased by customers, and customer contacts and other business information pertaining to such customer), product formulations, marketing techniques and cost data.

15. On or about October 10, 2005, I learned that Kinsman had diverted at least five customer accounts from ChemTreat to a competing chemical treatment company owned by Kinsman's wife, which company is called, upon information and belief, Rema, Inc. ("REMA"). Upon learning of this violation of Kinsman's duties to ChemTreat, I telephoned Kinsman personally on October 10, 2005. During the course of our conversation, Kinsman initially denied diverting any business from ChemTreat to REMA. Later in the conversation, however, he acknowledged diverting the ChemTreat customers and that those customers were now REMA customers.

16. During our conversation, Kinsman listed the names of the customers he had diverted from ChemTreat (the "Diverted Customers") beginning in approximately September

4

2004, all of whom were customers for whom Kinsman had supervisory, sales or service responsibility during the eighteen (18) calendar months preceding October 10, 2005. Those include Ingersoll Rand, Monmouth College, Bob Evans Farms, Illinois Cement, and The Kensington. The annual sales generated by ChemTreat from the accounts of the Diverted Customers prior to their diversion by Kinsman was approximately $37,000.

17. After our conversation, I learned that Kinsman had also diverted another of ChemTreat's customers, Carus Chemical, to his wife's company, REMA. For this account alone, ChemTreat had generated annual sales in excess of $100,000 prior to Kinsman's diversion of the account. Kinsman failed to disclose Carus Chemical as one of the customers he diverted from ChemTreat. Carus Chemical was a customer that, like the other Diverted Customers, was serviced by Kinsman during the eighteen calendar months preceding October 10, 2005.

18. Kinsman's employment with ChemTreat was terminated effective October 11, 2005.

19. In addition, Kinsman has failed to provide satisfactory service to other ChemTreat customers in his service area and such failure has resulted in the loss of those customers to other competing companies. As a result of Kinsman's failure to adhere to his Employment Agreement and the misdirection of his energies toward gaining customers for his wife's company instead of carrying out his duties as an employee of ChemTreat, ChemTreat has lost virtually all of its business serviced by Kinsman in central Illinois.

20. Further, by virtue of his employment with ChemTreat, Kinsman possesses confidential information and other proprietary information of ChemTreat.

21. The disclosure of such information to REMA and/or to manufacturers of REMA's products, and the solicitation of ChemTreat customers within eighteen (18) months following

5

Kinsman's termination are acts prohibited by Kinsman's Employment and Confidentiality Agreements, and have the potential to destroy the competitive advantage that ChemTreat enjoys from its product line and, therefore, are significant threats to the business of ChemTreat in the central Illinois area.

22.  The value of the information removed from ChemTreat is not subject to ready valuation and the diversion of customers by Kinsman is an ongoing violation of the terms of Kinsman's Employment and Confidentiality Agreements.

This ends the affidavit.

Dated: 10/31/05

*Randall L. Azzarello*
Randall L. Azzarello

Sworn to and subscribed before me this 31 day of October, 2005 by Randall L. Azzarello, who personally appeared before me and executed this affidavit.

*Phyllis B. Bagent*
Notary Public

My commission expires: 9/30/08

#712436 v1    017255.02100

6