Nov 08 05 04:53p
1:05-cv-01336-JBM-JAG  # 6   Page 1 of 8
p.1
E-FILED
Wednesday, 09 November, 2005 09:37:18 AM
Clerk, U.S. District Court, ILCD

FILED
NOV - 8 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

# EMPLOYMENT AGREEMENT

THIS AGREEMENT by and between CHEMTREAT, INC., a Virginia corporation ("CHEMTREAT") and Gregory P. Kinsman ("Employee") recites and provides as follows:

WHEREAS, CHEMTREAT is engaged in the business of selling and distributing chemicals, chemical products and other miscellaneous products at retail or wholesale and servicing equipment which uses or consumes products sold by CHEMTREAT; and

WHEREAS, Employee is desirous of working for CHEMTREAT in whatever capacity as may be determined by the Board of Directors of CHEMTREAT;

NOW, THEREFORE, in consideration of the employment relationship created hereby, the remuneration paid hereunder, and the mutual covenants and conditions hereinafter set forth, CHEMTREAT and Employee agree as follows:

1. **Employment**

    CHEMTREAT hereby employs Employee to conduct the business of CHEMTREAT with those customers and prospective customers of CHEMTREAT as designated by CHEMTREAT and/or developed by Employee. Employee covenants and agrees that he will devote his entire time and energy exclusively to the business of CHEMTREAT and that during the period of his employment, he will not engage in any other business, either for himself or for the account of any other person, firm or corporation without the prior consent of the Board of Directors of CHEMTREAT.

2. **Compensation**

    For all services to be rendered by Employee in any capacity hereunder, CHEMTREAT agrees to pay Employee such compensation as may be mutually agreed upon between Employee and CHEMTREAT from time to time.

3. **Termination of Previous Employment Agreements**

Employee does hereby represent and warrant that he has the right to enter into this contract and that he has terminated all previous employment agreements and is free from any previous employment contracts, except for post-termination covenants not to compete, if any, and restrictions on disclosure of confidential information.

4. **Termination**

Employee may resign and CHEMTREAT may terminate Employee at any time with or without cause by giving the other party written notice of termination. Termination is effective upon receipt by the non-terminating party of the written notice of termination. No commissions or compensation shall be payable to Employee by CHEMTREAT for sales or services (or any portion thereof) which are not delivered or performed as of the effective date of Employee's termination of employment with CHEMTREAT.

If Employee dies while this Agreement is in effect, the Agreement shall automatically terminate on the date of Employee's death, and CHEMTREAT shall be obligated to pay to Employee's estate Employee's monthly compensation or commissions computed as though Employee died on the last day of the month in which his death occurs.

The provisions of this Agreement contained in Paragraphs 6 through 11 hereof, as applicable, shall survive any termination of employment described herein.

5. **Disability**

In the event the Employee suffers a permanent, total disability as determined by a physician selected by the Company, this Agreement shall automatically terminate ninety (90) days after the date said physician determines that the employee became disabled. In such event, CHEMTREAT shall be obligated

2

to pay Employee his monthly compensation or accrued commissions up to the date of termination.

6. **Non-Compete Agreement**

The parties hereto acknowledge that CHEMTREAT is engaged in the business of the sale of equipment and chemical formulations for treatment of boilers, cooling towers, heating and cooling systems, raw water and waste water systems and the sale of fuel oil treatments and providing servicing activities incidental to the sale of the above products. Employee hereby acknowledges that during the course of his employment he has or will receive or have access to certain confidential and proprietary information which is essential to the sales and service activities of CHEMTREAT including, but not limited to, selling methods, price sheets and product manuals. Employee hereby further acknowledges that the customers of CHEMTREAT constitute a valuable asset to CHEMTREAT and that CHEMTREAT has legitimate business interests to protect by the restrictions contained herein.

During the eighteen (18) month period following the effective date of termination by either party of the employment relationship created hereunder, Employee shall not in his own name, or as a consultant, or in any other capacity on behalf of any other person or entity solicit, call upon, communicate with, enter into any sales or servicing agreements with, or attempt to communicate with any CHEMTREAT customer or prospective customer, as defined herein, for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, service or equipment competitive with any product, service or equipment then sold, offered for sale, provided, or under development by CHEMTREAT.

For the purposes of this Agreement, "customer" shall mean any person or entity that is a customer of CHEMTREAT (or any representative of such person or entity) with whom Employee had any contact, communication, or for which Employee had supervisory, sales or service responsibility during any of the eighteen

(18) consecutive calendar months preceding the effective date of termination of his CHEMTREAT employment. For the purposes of this Agreement, "prospective customer" shall mean any person or entity (or representative or such person or entity) for which Employee performed or participated in a survey or written proposal during the twelve (12) consecutive calendar months preceding termination of Employee's employment with CHEMTREAT.

Employee further agrees that the above restrictions upon him are reasonable in all respects including the description of CHEMTREAT's business and the time, customer, and prospective customer restrictions. Employee further expressly acknowledges that such restrictions will not unreasonably restrict him in earning a livelihood.

7. **Interference With Contractual Relations**

For the eighteen (18) consecutive calendar months immediately following the effective date of termination of Employee's CHEMTREAT employment, Employee agrees that he shall not induce, encourage, or solicit any other employee of CHEMTREAT to terminate his employment with CHEMTREAT.

8. **Injunctive Relief**

Employee acknowledges and agrees that it would be difficult to quantify or to fully compensate CHEMTREAT in damages for the breach of Employee's obligations hereunder. Accordingly, Employee specifically agrees that CHEMTREAT shall be entitled to temporary and permanent injunctive relief to enforce the provisions of this Agreement and that such relief may be granted without the necessity of proving actual damages or irreparable injury or harm. Nothing contained herein, however, shall diminish the right of CHEMTREAT to claim and recover damages as appropriate.

9. <u>Attorneys' Fees</u>

In the event CHEMTREAT files suit against Employee to enforce any provision of this Agreement and a court of competent jurisdiction finds in favor of CHEMTREAT, Employee shall reimburse CHEMTREAT its reasonable costs and attorneys' fees incurred in maintaining such suit.

10. <u>Miscellaneous</u>

This Agreement shall not be binding until signed by an officer of CHEMTREAT at its corporate offices in Richmond, Virginia.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legatees, devisees, administrators, executors, successors and assigns, and its terms shall not be amended except by a writing signed by both parties.

If any portion of this contract shall be determined unenforceable by a court of competent jurisdiction, the remaining provisions of this Agreement shall remain in full force and effect. If any of the covenants or restraints provided in this Agreement are adjudicated to be excessively broad or otherwise unenforceable, said covenant or restraint shall be reduced to and enforced to whatever extent deemed reasonable by said court.

Employee acknowledges that he was provided an unsigned copy of this Agreement in advance of accepting initial employment or continued employment and was accorded ample opportunity to read and seek whatever counsel relative to the Agreement he deemed necessary.

11. <u>Governing Law</u>

This Agreement is made in, and shall be construed under and governed by the laws of, the Commonwealth of Virginia exclusive of its choice of law provisions.

IN WITNESS WHEREOF, Employee has read, understood and duly executed this Agreement, and CHEMTREAT, INC., has caused this Agreement to be executed in its name and on its behalf by its duly authorized officers.

CHEMTREAT, INC.

Date: August 17, 1995        By: *Harrison R. Tyler*
                                  Harrison R. Tyler, President

Date: August 17, 1995        EMPLOYEE:

                             *Gregory P. Kinsman*
                             Signature

                             GREGORY P. KINSMAN
                             Print Name

## TRADE SECRETS AND CONFIDENTIALITY AGREEMENT

In consideration of my employment by ChemTreat, Inc. (Corporation) and of the salary and wages paid to me in connection with such employment, and other good and valuable consideration, I agree as follows:

1.　　I recognize that the Corporation has a substantial investment in its development and use of commercially valuable technical and nontechnical information which the Corporation desires to protect by patents or by holding such information secret or confidential. Such proprietary information is vital to the success of the Corporation's business. I also recognize that during my employment, I will receive, develop or otherwise acquire such secret or confidential technical and nontechnical information. Except as authorized in writing by the Corporation, I will not disclose to persons not employed by the Corporation or to those persons employed by the Corporation to whom disclosure has not been previously approved by the president or any vice president of the Corporation, or use directly or indirectly, during or after my employment with the Corporation, any information of the Corporation I obtain during the course of my employment relating to inventions, products, product specifications, processes, procedures, prices, discounts, manufacturing costs, business affairs, future plans, technical data, customer lists (customer lists to include among other things customer requirements, products purchased by customers, and customer contacts and other business information pertaining to such customer), product formulations, marketing techniques and cost data. The foregoing sentence shall not be construed to apply to the direct or indirect use of information by employees of the Corporation in the performance of their duties and responsibilities during the course of their employment by the Corporation. This agreement also covers other information which is of a secret or confidential nature (whether or not acquired or developed by me) designated from time to time by the Corporation as being proprietary, trade secret or confidential information.

2.　　Upon termination of my employment, for any reason, I shall not remove or retain without the Corporation's prior written consent any figures, calculations, letters, papers, drawings, reports, financial statements, product specifications, customer lists, product formulations, cost data or other confidential information of any type or description, or copies, summaries or extracts thereof, and I shall promptly return to the Corporation all such items which may be in my possession or control at the time of termination of my employment, other than information and documents belonging to me that were prepared or created prior to my employment by the Corporation which I shall be entitled to retain after termination of my employment.

3.　　I will communicate to the Corporation promptly and fully all discoveries, improvements, processes, devices and inventions (hereinafter collectively called "inventions") made, discovered, conceived or developed by me

7

(either solely or jointly with others) during my employment and for six months thereafter which may be useful in or relate to the lines of the actual or anticipated business, work or investigations of the Corporation or which result from or are suggested by any work I may do for the Corporation; and such inventions, whether patented or not, shall be and remain the sole and exclusive property of the Corporation or its nominees or assigns.

4.  I will keep and maintain adequate and current written records of all such inventions, in the form of notes, sketches, drawings and reports relating thereto, which records shall be and remain the property of and available to the Corporation at all times. All such records shall remain on the premises of the Corporation at all times. Further, during and after my employment, without charge to the Corporation but at its request and expense, I will assist the Corporation and its nominees in every proper way to obtain and vest in it or them title to patents or such inventions in all countries by executing all necessary or desirable documents, including applications for patents and assignments thereof. I understand that as consideration for my assignment of any patent to the Corporation I will receive a cash bonus within the then current fiscal year of the Corporation.

5.  I understand and agree that in the event of any breach, violation or evasion of the terms of this agreement, any such breach, violation or evasion will result in immediate and irrevocable injury or harm to the Corporation and the Corporation shall be entitled to equitable and legal relief to protect its interest, including the recovery of its costs, expenses and attorney's fees in pursuing any such remedies.

6.  This agreement shall be construed according to the laws of the State of Virginia, and shall be binding upon my heirs, legal representatives and assigns and shall inure to the benefit of any successors and assigns of the Corporation.

7.  It is our intention that the provision of this agreement be enforceable to the fullest extent permissible under applicable law, and that unenforceability (or modification to conform to applicable law) of any provision, in whole or in part, shall not render unenforceable, or impair, the remainder of this agreement which shall be deemed to be amended to delete or modify, as necessary, the offending provision and to alter the balance of this agreement in order to render it valid and enforceable.

CHEMTREAT, INC.

BY: *Hanson Doyle*

*Gregory P. Kinsman*
Employee's Signature

Date: August 17, 1995