U.S. DISTRICT COURT
FOR CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CHEMTREAT, INC. a Virginia corporation, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No.  05 CV 1336 |
| GREGORY P. KINSMAN, and MICHELLE M. KINSMAN, individually and d/b/a REMA CHEMICALS, ) ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF**

NOW COMES CHEMTREAT, INC., a Virginia corporation ("CHEMTREAT") by its attorneys, Cassidy & Mueller, and respectfully submits to this Court the following Memorandum of Law in Support of its Motions for Temporary and Preliminary Injunctive Relief.

**I.**

**NATURE OF THE ACTION**

This is a cause of action seeking damages and injunctive relief against the Defendants, GREGORY P. KINSMAN, and his wife, MICHELLE M. KINSMAN, individually and d/b/a REMA CHEMICALS. GREGORY P. KINSMAN was employed by CHEMTREAT from August 17, 1995 until his recent termination on October 11, 2005. In that regard GREGORY P. KINSMAN executed an Employment Agreement on August 17, 1995. The Employment Agreement contains the following non-solicitation provision.

> During the eighteen (18) month period following the effective date of termination by either party of the employment relationship created

> hereunder, employee shall not in his own name, or as a consultant, or in any other capacity on behalf of any other person or entity solicit, call upon, communicate with, enter into any sales or servicing agreements, with, or attempt to communicate with any CHEMTREAT customer or prospective customer, as defined herein, for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, service or equipment competitive with any product, service or equipment then sold, offered for sale, provided, or under development by CHEMTREAT.

Further, the Employment Agreement included a Confidentiality Agreement which provided, in pertinent part, as follows:

> I [KINSMAN] will not disclose to persons not employed by the corporation or to those persons employed by the corporation to whom disclosure has not been previously approved by the president or any vice president of the corporation, or use directly or indirectly, during or after my employment with the corporation, any information of the corporation I obtained during the course of my employment relating to inventions, products, product specifications, processes, procedures, prices, discounts, manufacturing costs, business affairs, future plans, technical data, customer lists (customer to include among other things customer requirements, products purchased by customers, and customer contacts and other business information pertaining to such customer), product formulations, marketing techniques and cost data.

As alleged CHEMTREAT discovered in early October 2005 that at some earlier point in time KINSMAN, in conjunction with his wife, had created a company called REMA for the sole purpose of engaging in direct competition with CHEMTREAT in direct violation of his fiduciary and contractual obligations. In furtherance of his scheme, and while still employed by CHEMTREAT, KINSMAN would call upon CHEMTREAT'S existing customers and expressly solicit them to divert their business away from CHEMTREAT to REMA. Moreover, after diverting certain customers of CHEMTREAT to REMA KINSMAN disclosed CHEMTREAT'S proprietary product formulations to one or more chemical suppliers for the purpose of filling orders for the diverted customers. Upon information and belief, this conduct took place over the course of better than a year and resulted in the successful diversion of no less than seven (7)

CHEMTREAT customers. Moreover, customers who were not directly diverted to REMA have been lost due to KINSMAN'S failure to properly service those customers while concentrating on the competing business.

CHEMTREAT'S Complaint is brought in several counts against GREGORY P. KINSMAN, alleging, <u>inter alia</u>, a breach of his Employment Agreement and related restricted covenants, intentional interference with CHEMTREAT'S business relationships with its customers and KINSMAN'S breach of his fiduciary obligations to CHEMTREAT. Additionally, MICHELLE M. KINSMAN, individually, and d/b/a REMA, has been named as a Defendant arising from her intentional interference with the employment contract between CHEMTREAT and her husband and her conspiracy with her husband to engage in direct competition with CHEMTREAT'S business to their own benefit.

## II.

## PRELIMINARY INJUNCTION

The decision to grant or deny preliminary injunctive relief lies within the sound discretion of the trial court. <u>Millard Maintenance Service Company v. Bernero</u>, 207 Ill.App.3d 736 (1st Dist. 1990). A party requesting a preliminary injunction must demonstrate: (1) a clearly ascertained right in need of protection; (2) irreparable harm in the absence of an injunction; (3) no adequate remedy at law for the injury; and (4) the likelihood of success on the merits. <u>Sarah Bush Lincoln Health Center v. Perket</u>, 238 Ill.App.3d 958 (4th Dist. 1992); <u>Office Mates Five v. Hazen</u>, 234 Ill.App.3d 557, 567 (1st Dist. 1992).

In the instant case, the primary basis for the grant of preliminary injunctive relief would be the restrictive covenants contained in KINSMAN'S Employment Agreement.

**III.**

**RESTRICTIVE COVENANTS**

Restrictive covenants serve a real and measurable social utility in that they protect the employer from unwarranted erosion of either confidential information or the loss of the goodwill of its business. Tower Oil & Tech Company v. Buckley, 99 Ill.App.3d 637 (1st Dist. 1981). In order for restrictive covenants in employment contracts to have anything but a hollow meaning, they must be enforced where equitable. Shorr Paper Products, Inc. v. Frary, 74 Ill.App.3d 498 (2nd Dist. 1979). The determination of whether a restrictive covenant is enforceable is a question of law. Woodfield Group, Inc. v. DeLisle, 295 Ill.App.3d 935 (1st Dist. 1998). A post employment restrictive covenant will be enforced if it is necessary to protect a legitimate business interest of the employer and is reasonable in scope. Woodfield Group, Inc., 295 Ill.App.3d at 938. A restrictive covenants reasonableness is measured by its hardship to the employee, its effect upon the general public, and the reasonableness of the time, territory and activity restrictions. Arpac Corp. v. Murray, 226 Ill.App.3d 65 (1992). Prior to analyzing the reasonableness of a covenant not to compete however, a court must make two determinations: (1) the covenant is ancillary to a valid contract, that is, it must be subordinate to the contract's main purpose; and (2) there must be adequate consideration to support the covenant. Woodfield Group, Inc., 295 Ill.App.3d at 938.

As the following establishes, CHEMTREAT will be able to establish all of the elements necessary for this Court to grant the requested preliminary injunctive relief.

4

IV.

ARGUMENT

A.

**The Restrictive Covenant Are Ancillary To A Written Employment Contract And Is Supported By Adequate Consideration**

The restrictive covenant at issue is clearly subordinate to the main purpose of the Employment Agreement. By its own terms, the Agreement defines the employment relationship between the parties and the restrictive covenant is merely ancillary to that relationship. A restrictive covenant may meet the requirements for ancillarity if it is ancillary to an employment relationship even though the employment may remain at will. Lawrence & Allan, Inc. v. Cambridge Human Resources Group, Inc., 292 F.3d 131 (2nd Dist. 1997); Abbel v. Fox, 274 Ill.App.3d. 811 (4th Dist. 1995).

Moreover, it is clear that adequate consideration exists. It is well established that continued employment itself constitutes adequate consideration for a post employment covenant not to compete. Millard Maintenance Service v. Bernero, 207 Ill.App.3d 736 (1st Dist. 1990). Numerous cases have held the continued employment for two to three years after an employee signs a restrictive covenant is sufficient consideration. In the present case, Plaintiff executed the restrictive covenants as part and parcel of the initial Employment Agreement which remained in effect for better than ten years. Given the duration of KINSMAN'S continued employment after execution of the Employment Agreement adequate consideration exists as a matter of law.

B.

**Protectible Business Interest**

Illinois Courts have held that there are two general situations in which a protectible business interest may be found to exist for the purpose of enforcing a restrictive covenant:

1.  Where the former employee acquired confidential information through his employment and subsequently attempted to use it for his own benefit;

2.  Where, by the nature of the business, the customer relationship is near permanent and, but for his association with Plaintiff, Defendant would not have contact with the customers in question. <u>Hanchet Paper Co. v. Melchiorre</u>, 341 Ill.App.3d 345 (2nd Dist. 2003); <u>Lee/O'Keefe Insurance Agency v. Ferega</u>, 163 Ill.App.3d 997, 1004 (4th Dist. 1987).

It is respectfully submitted that CHEMTREAT will be able to satisfy both the "near permanency test" and establish that KINSMAN has misappropriated confidential information.

1.

<u>Near Permanency Customer Relationship</u>

Generally, the near permanency test turns in large degree on the nature of the business involved, and certain businesses are just more amenable to success under it. <u>Office Mates Five v. Hazen</u>, 234 Ill.App.3d 557, 571 (1st Dist. 1992). For instance, a near permanent relationship is inherent in the provision of professional services. <u>Springfield Rare Coin Galleries v. Mileham</u> 250 Ill.App.3d 922, 935 (4th Dist. 1993). Near permanent relationships are more likely to occur in the context of professional or "quasi professional" businesses that garner customer loyalty by offering unique products or services, as opposed to purely sales. <u>Midwest Television, Inc. v. Oloffson</u>, 298 Ill.App.3d 548 (3rd Dist. 1998).

The First District Appellate in <u>Agrimerica v. Mathes</u>, 199 Ill.App.3d 435 (1st Dist. 1990) has noted seven factors which are relevant to determining whether the near permanency test has been met. Those include (1) the number of years the employer needs to develop its clientele; (2) the money invested to develop a clientele; (3) the difficulty involved in developing the clientele; (4) the extent of personal customer contact by the employee; (5) the employer's degree of knowledge of its customer; (6) the time the customers have been associated with the employer; and (7) the continuity of relationships between employers and its customers. However, these

factors need not be applied where the subject employer is involved in the provision of professional services as opposed to merely sales. The court in <u>Springfield Rare Coin Galleries v. Mileham</u>, 250 Ill.App.3d 922 (4th Dist. 1993), addressed the distinction between these two categories of businesses and, in so doing, stated:

> Where the employer is engaged in the provision of professional service and employ the employee to assist in the provision of these services, and the evidence indicates the employee would not have contact with the clients but for the association with the employer, the near permanency test is satisfied…
>
> … while the *Agrimerica* factors may be helpful in some case, we find they need not be applied in all cases. When a given business falls squarely within one of the two categories of cases this court has previously recognized, then their permanency determination may be made without resort to the *Agrimerica* factors. <u>Id.</u> At 936-937.

As applied to the case at bar, the evidence will establish that CHEMTREAT sales representatives provide professional, or at the very least "quasi-professional", services to CHEMTREAT'S customers. CHEMTREAT supplies proprietary industrial water treatment products to large manufacturing, institutional and industrial facilities. CHEMTREAT principally supplies the product services and expertise to maintain the heating and cooling water systems within the physical plant of its customers and process treatment applications of its customers. CHEMTREAT'S product line consists of approximately twelve hundred proprietary products which <u>it</u> has developed since the company was established in 1968. To develop, refine and preserve its product line, CHEMTREAT maintains a fully staffed research and development department which currently consists of approximately twenty persons. That department creates all of the company's proprietary product formulations for use in its water treatments services. Those unique products and services provided by CHEMTREAT are of a highly technical nature requiring extensive technical expertise not only from its laboratory and corporate technical staff

but also its field sales personnel. Most CHEMTREAT salesmen are chemists, biologists or chemical engineers by training.

Due to the highly technical nature of the product lines provided, CHEMTREAT customers do not cross purchase from numerous providers but rather, obtain its water treatment from a single supplier. As such, significant amounts of time, effort and money is invested into developing each customer and CHEMTREAT goes to great lengths to provide optimum service for those customers in order to maintain longstanding relationships.

Based upon the foregoing, CHEMTREAT will readily be able to establish that it enjoys a near permanent relationship with its customers and thus, has a protectible interest.

## 2.

## Confidential Information

CHEMTREAT will further be able to establish a protectible business interest due to the confidential nature of the information imparted to KINSMAN. A restrictive covenant may be utilized to protect an employer from the disadvantageous use of confidential information revealed to an employee during the terms of his employment. Tower Oil & Tech Company v. Buckley, 99 Ill.App.3d 637 (1st Dist. 1981). Obviously, at the conclusion of his employment an employee may take with him general skills and knowledge he has acquired. However, it "is equally clear that the same employee may not take with him confidential information including particularized plans or processes developed by his employer and disclosed to him while the employer-employee relationship exists, which are unknown to others in the industry and which give the employer an advantage over his competitors". Schulenburg v. Signatrol, Inc., 33 Ill.2d 379 (1965). Absent a contractual agreement, an employers' protection against unfair competitive advantage extends only to trade secrets or near permanent customer relationships. However, if

the parties have entered into a restrictive covenant not to compete, the scope of protection afforded a former employer is quite broad and may be extended to generalized confidential business information. AMP, Inc. v. Fleischhacker, 823 F.2d 1199, 1201 (7th Cir. 1987); see also Tower Oil & Tech Company v. Buckley, 99 Ill.App.3d 637 (1st Dist. 1981). (*Neither the existence of the misuse of a trade secret is required to enforce a restrictive covenant*).

Courts recognize proprietary interests distinct from trade secrets, such as interest in confidential information learned by the employee as a result of his employment subsequently used for his own benefit. Agrimerica Inc. v. Mathes, 170 Ill.App.3d 1025 (1st Dist. 1988). "Confidential information" can take many forms. Millard Maintenance Service Co. v. Bernero, 207 Ill.App.3d 736 (1st Dist. 1990) (*Employer's pricing formula held to be protectible confidential information*); Office Electronics, Inc. v. Grafic Forms, Inc., 56 Ill.App.3d 395 (2nd Dist. 1978) (*Knowledge of customer information including particular requirements constitutes protectible confidential information*); Tower Oil & Tech Company v. Buckley, 99 Ill.App.3d 637 (1st Dist. 1981) (*Confidential information which justify use of a restrictive covenant includes training in the employer's business, application of new products, access to ideas to improve customer service, etc.*). Whatever form such information takes, it will be protected by the courts if the information would be advantageous to a competitor, the employee was privy to the information and the information is not generally known within the industry. Agrimerica Inc. v. Mathes, 170 Ill.App.3d 1025 (1st Dist. 1988); Millard Maintenance Service Co. v. Bernero, 207 Ill.App.3d 736 (1st Dist. 1990); Tower Oil & Tech Company v. Buckley, 99 Ill.App.3d 637 (1st Dist. 1981).

In the present case, as stated previously, the products and services provided by CHEMTREAT are of a highly technical nature requiring extensive technical expertise. The

product formulations of CHEMTREAT are extremely valuable assets of the company from which it derives significant competitive advantage in the marketplace. Its unique and proprietary formulations are a cornerstone of the comprehensive water treatment services CHEMTREAT provides for its customers and thus, would not have been disclosed or made available to KINSMAN but for the protections which CHEMTREAT believed it had by virtue of the non-disclosure and non-competition covenants at issue.

Base upon the foregoing, as with the permanent customer relationship issue, CHEMTREAT will be able to readily establish that KINSMAN acquired confidential information through his employment and is subsequently attempting to use it for his own benefit.

### C.

### Irreparable Injury

Once a protectible interest is established, irreparable injury is presumed to ensue if the interest is not protected. <u>Arpac Corp. v. Murray</u>, 226 Ill.App.3d 65 (1st Dist. 1992). "Because the employer has taken care to guard his interest by executing a restrictive covenant expressly contemplating injunctive relief to prevent future violations, Illinois Courts have not insisted on an express showing of irreparable injury". <u>AMP, Inc. v. Fleischhacker</u>, 823 F.2d 1199, 1206 (7th Cir. 1987). See also <u>Agrimerica Inc. v. Mathes</u>, 170 Ill.App.3d 1035 (1st. Dist. 1988) (*Once an interest susceptive to protection is established, injury to the plaintiff is presumed where that interest remains unprotected*).

Notwithstanding this general rule, the irreparable harm that results if injunctive relief does not issue is quite apparent. KINSMAN is poised to use all of the knowledge imparted to him by CHEMTREAT to further his new competitive efforts and he has demonstrated his willingness and intent to violate the restrictive covenant by directly soliciting CHEMTREAT'S customers during and subsequent to his employment. CHEMTREAT'S interest in its proprietary

formulations which it has developed over the years is now being employed by KINSMAN for his own benefit.

In summary, irreparable harm is quite real and apparent in this case. Moreover, because CHEMTREAT can demonstrate that it has a protectible interest, irreparable harm is presumed to follow if the interest is left unprotected.

**D.**

**No Adequate Remedy At Law**

As has been demonstrated, KINSMAN has considerable inside knowledge of CHEMTREAT'S operations and proprietary formulations. Due to the wrongful conduct of KINSMAN thus far, CHEMTREAT has lost customers and corresponding income. Moreover, the continued violation of the contractual covenants will result in harm that cannot be readily ascertained. KINSMAN'S failure to use his best efforts on behalf of CHEMTREAT during his employment has, in all probability, resulted in the loss of customers which were not directly diverted to the competing business. Whether or not this is the case with respect to each individual customer which has been lost is not ascertainable. The continued competition and use of proprietary formulations further erodes the good will of the company, the full effect of which may never be completely known. Consequently, there will be damages sustained by CHEMTREAT which would not be provable at a trial and thus, no adequate remedy at law would exist for KINSMAN'S continued violations.

**E.**

**Likelihood Of Success On The Merits**

Based upon the foregoing, there is clearly a reasonable likelihood of success on the merits. The terms of the restrictive covenants are clearly reasonable in both time and scope of the

restrictions. KINSMAN has not disputed that he has competed with CHEMTREAT or that customers of CHEMTREAT have been diverted to REMA. As such, success on the merits of the allegations contained in CHEMTREAT'S Complaint is highly likely.

V.

**CONCLUSION**

Where a breach of a restrictive covenant is established, "it is not necessary that plaintiff's proof at [the preliminary injunction] stage be incontrovertible or complete in every detail. … All that is necessary is that the petitioning party raise a fair question as to the existence of the right and can lead the court to believe that it probably will be entitled to the relief prayed for if the proof should sustain its allegations". Office Electronics Inc. v. Grafic Forms, Inc., 56 Ill.App.3d 395 (2nd Dist. 1978). Based upon the foregoing it is respectfully submitted that at the very least a fair question as to the interest claimed by CHEMTREAT exists and injunctive relief should issue.

                        CASSIDY & MUELLER

                        By: s/ Andrew D. CASSIDY
                            Attorneys for the Plaintiff,
                            CHEMTREAT, INC., a Virginia corporation

Andrew D. Cassidy
CASSIDY & MUELLER
323 Commerce Bank Bldg.
416 Main Street
Peoria, Illinois 61602

## CERTIFICATE OF SERVICE

    I hereby certify that on November 9, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system an emailed to the following:

Kevin Wolfe                    jkwolfe@hslaw.us

                                        s/    ANDREW D. CASSIDY  
                                              CASSIDY & MUELLER  
                                              416 Main Street, Suite 323  
                                              Peoria, IL 61602  
                                              Telephone: 309/676-0591  
                                              Fax: 309/676-8036  
                                              E-mail: dcassidy@cassidymueller.com