U.S. DISTRICT COURT
FOR CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CHEMTREAT, INC. a Virginia corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05 CV 1336 |
| ) | |
| GREGORY P. KINSMAN, MICHELLE M. ) | |
| KINSMAN and RHEMA ELPIS ) | |
| ENTERPRISES L.L.C., an Illinois Limited ) | |
| Liability Corporation, f/k/a RHEMA ) | |
| ENTERPRISES, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## AMENDED COMPLAINT

NOW COMES CHEMTREAT, INC., a Virginia corporation ("CHEMTREAT") by its attorneys, Cassidy & Mueller, and for its cause of action agisnt the Defendants, GREGORY P. KINSMAN, MICHELLE M. KINSMAN and RHEMA ELPIS ENTERPRISES LLC, an Illinois Limited Liability Corporation, f/k/a RHEMA ENTERPRISES ("RHEMA") states as follows:

## COUNT I

## (BREACH OF CONTRACT)

For Count I of its cause of action, against Defendant, GREGORY P. KINSMAN, Plaintiff states:

1. The Plaintiff is a Virginia corporation with its principal place of business located in the State of Virginia. The Defendants, GREGORY P. KINSMAN and MICHELLE M. KINSMAN, are residents of the State of Illinois. The Defendant, RHEMA ELPIS ENTERPRISES L.L.C.is an Illinois Limited Liability Corporation. The amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy Five Thousand ($75,000) Dollars.

2. At all relevant times CHEMTREAT was, and is, engaged in the sale and distribution of water treatment chemicals for use in boilers, cooling towers, heating and air conditioning systems, and other related products and servicing equipment.

3.      At all relevant times GREGORY P. KINSMAN was an employee of CHEMTREAT pursuant to a valid and enforceable Employment Agreement, a copy of which is attached hereto as Exhibit A.

4.      Pursuant to the terms of his Employment Agreement, GREGORY P. KINSMAN owed certain obligations and duties to CHEMTREAT, including:

   a.    The obligation to devote his entire time and duty exclusively to the business of CHEMTREAT;

   b.    The obligation to not engage in any other business, either for himself or for the account of any other person, firm or corporation;

   c.    The obligation to not call upon or enter into any sales or servicing agreements with any CHEMTREAT customer for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, or service competitive with any product or service produced by CHEMTREAT;

   d.    The obligation to not disclose any proprietary information of CHEMTREAT including, but not limited to, product specifications, technical data and product formulations; and

   e.    The implied obligation of good faith and fair dealing with CHEMTREAT.

5.      Throughout 2004 and 2005 the Defendant, GREGORY P. KINSMAN, wrongfully and without legal justification breached the express and implied terms of his Employment Agreement in one or more of the following ways:

   a.    In conjunction with his wife created a chemical business, RHEMA, for the sole purpose of competing with CHEMTREAT in his sales region;

   b.    Engaged himself in the competing business of RHEMA for the material benefit of himself and his wife;

   c.    Made sales calls upon existing customers of CHEMTREAT for the purpose of diverting those customers to RHEMA;

   d.    Called upon prospective customers of CHEMTREAT and diverted their business to RHEMA;

   e.    Intentionally and knowingly misrepresented the status of CHEMTREAT, and his employment with CHEMTREAT, for the purpose of inducing CHEMTREAT customers to place orders with RHEMA;

2

   f.  Disclosed proprietary and technical product specifications of CHEMTREAT to outside chemical distributors for the purpose of filling orders for CHEMTREAT customers which had been diverted to RHEMA; and

   g.  Conspired to create an operating business and divert CHEMTREAT existing and prospective customers for his own financial benefit in violation of his implied covenant of good faith and fair dealing.

6.  As a direct and proximate result of one or more of the foregoing breaches of the Employment Agreement, CHEMTREAT has lost sales and income, and will continue to lose income in the future, has lost, and will continue to lose customers, business and profits, and has sustained significant injury to its business reputation and goodwill all in an amount in excess of $75,000.

7.  Pursuant to the terms of the Employment Agreement, GREGORY P. KINSMAN, is responsible to reimburse CHEMTREAT for all costs and attorneys fees incurred as a result of any breach thereof.

8.  CHEMTREAT is at this point unable to accurately calculate the amount of the damages it has incurred as result of Defendants' actions due to the fact that the sales records of the customers diverted by Defendants are currently in Defendants' possession and the full extent of Defendants' wrongful conduct has not yet been fully determined.

WHEREFORE, Plaintiff CHEMTREAT, INC., a Virginia corporation, prays for judgment in its favor and against Defendant, GREGORY P. KINSMAN, in an amount in excess of $75,000 and for recovery of its costs and attorneys' fees incurred in this action.

*PLAINTIFF DEMANDS TRIAL BY JURY.*

## COUNT II

**(INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS)**

For Count II of its cause of action, against GREGORY P. KINSMAN, CHEMTREAT states as follows:

1-5.  CHEMTREAT repeats and re-alleges paragraphs 1 through 5 of Count I of its cause of action against GREGORY P. KINSMAN as and for paragraphs 1 through 5 of Count II of its cause of action.

6.　　Prior to the wrongful conduct of Defendant, GREGORY P. KINSMAN, CHEMTREAT enjoyed a continuing business relationship with its existing customers.

7.　　At all relevant times Defendant, GREGORY P. KINSMAN, was aware of the continuing business relationship between CHEMTREAT and its existing customers.

8.　　Defendant, GREGORY P. KINSMAN, intentionally and knowingly interfered with the business relationships which existed between CHEMTREAT and its customers in undertaking to divert those customers to his own competing business and thereby, cause existing customers of CHEMTREAT to terminate their relationship with CHEMTREAT.

9.　　As a direct and proximate result of the intentional interference with a business relationship which existed between CHEMTREAT and its existing customers, CHEMTREAT has sustained damage in the form of past and future lost sales, income and profits and has sustained damage to its business reputation and good will.

10.　　CHEMTREAT is at this point unable to accurately calculate the amount of the damages it has incurred as result of Defendants' actions due to the fact that the sales records of the customers diverted by Defendants are currently in Defendants' possession and the full extent of Defendants' wrongful conduct has not yet been fully determined.

WHEREFORE, Plaintiff CHEMTREAT, INC., a Virginia corporation, prays for judgment in its favor and against Defendant, GREGORY P. KINSMAN, for compensatory damages in an amount in excess of $75,000 and for punitive damages in the amount of $250,000, together with its costs of suit.

*PLAINTIFF DEMANDS TRIAL BY JURY.*

## COUNT III

### (BREACH OF FIDUCIARY OBLIGATION - DAMAGES)

For Count III of its cause of action, against GREGORY P. KINSMAN, Plaintiff states as follows:

1-5.　　CHEMTREAT repeats and re-alleges paragraphs 1 through 5 of Count I of its cause of action against GREGORY P. KINSMAN as and for paragraphs 1 through 5 of Count III of its cause of action.

4

6.     By virtue of the Employment Agreement the Defendant, GREGORY P. KINSMAN, stood in a fiduciary relationship with CHEMTREAT.

7.     Defendant, GREGORY P. KINSMAN, breached the fiduciary obligation which he owed to CHEMTREAT by his actions in diverting the customers and business opportunities of CHEMTREAT to his own benefit and appropriating the confidential proprietary information of CHEMTREAT to his own benefit.

8.     As a direct and proximate result of the Defendant's breach of his fiduciary duties to CHEMTREAT, CHEMTREAT has sustained damages in the form of past and future lost sales, income and profits and has sustained damage to its business reputation and good will.

9.     CHEMTREAT is at this point unable to accurately calculate the amount of the damages it has incurred as result of Defendants' actions due to the fact that the sales records of the customers diverted by Defendants are currently in Defendants' possession and the full extent of Defendants' wrongful conduct has not yet been fully determined.

WHEREFORE, Plaintiff CHEMTREAT, INC., a Virginia corporation, prays for judgment in its favor and against Defendant, GREGORY P. KINSMAN, for compensatory damages in an amount in excess of $75,000 and for punitive damages in the amount of $250,000, together with its costs of suit.

*PLAINTIFF DEMANDS TRIAL BY JURY.*

## COUNT IV

### (BREACH OF FIDUCIARY OBLIGATION - CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF)

For Count IV of its cause of action, against GREGORY P. KINSMAN, Plaintiff states as follows:

1-5.     CHEMTREAT repeats and re-alleges paragraphs 1 through 5 of Count I of its cause of action against GREGORY P. KINSMAN as and for paragraphs 1 through 5 of Count IV of its cause of action.

5

6-9.     CHEMTREAT repeats and re-alleges paragraphs 6 through 9 of Count III of its cause of action against GREGORY P. KINSMAN as and for paragraphs 6 through 9 of Count IV of its cause of action.

WHEREFORE, Plaintiff CHEMTREAT, INC., a Virginia corporation, prays for the following equitable relief,

a.     For the imposition of a constructive trust upon the proceeds realized by Defendants from sales to CHEMTREAT'S existing and prospective customers in violation of Defendants' fiduciary duty;

b.     For a permanent injunction against Defendants enjoining them from continuing to sell to, service or otherwise conduct business with the customers, and prospective customers of CHEMTREAT which were diverted as a result of Defendants' breach of his fiduciary duties; and

c.     For such other and further relief as the Court deems just and reasonable.

*PLAINTIFF DEMANDS TRIAL BY JURY.*

## COUNT V

### (TEMPORARY AND PERMANENT INJUNCTIVE RELIEF)

For Count IV of its cause of action, against Defendant, GREGORY P. KINSMAN, CHEMTREAT states as follows:

1-5.     CHEMTREAT repeats and re-alleges paragraphs 1 through 5 of Count I of its cause of action against GREGORY P. KINSMAN as and for paragraphs 1 through 5 of Count V of its cause of action.

6.     The Trade Secrets and Confidentiality Agreement, which is made a part of the Employment Agreement, provides, in relevant part, as follows:

… I will not disclose to persons not employed by the Corporation or to those persons employed by the Corporation to whom disclosure has not been previously approved by the president or any vice president of the Corporation, or used directly or indirectly, during or after my employment with the Corporation, any information of the Corporation I obtained during the course of my employment relating to inventions, products, product specifications, processes, procedures, prices, discounts, manufacturing costs, business affairs, future plans, technical data, customer lists (customer lists to include among other things customer requirements, products purchased by customers, and customer contacts and other business information pertaining

to such customer), product formulations, marketing techniques and costs data.

2. Upon termination of my employment, for any reason, I shall not remove or retain without the Corporation's prior written consent any figures, calculations, letters, papers, drawings, reports, financial statements, product specifications, customer lists, product formulations, cost data or other confidential information of any type or descriptions, or copies, summaries or extracts thereof, and I shall promptly return ….

7. Moreover, the Employment Agreement, provides, in relevant part, as follows:

During the eighteen (18) months following the effective date of termination by either party of the employment relationship created hereunder, employee shall not in his own name, or as a consultant, or in any other capacity on behalf of any other person or entity solicit, call upon, communicate with, enter into any sales or servicing agreements with, or attempt to communicate with any CHEMTREAT customer or prospective customer, as defined herein, for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, service or equipment competitive with any product, service or equipment then sold, offered for sale, provided, or under development by CHEMTREAT.

8. The Defendant is in breach of the foregoing contractual covenants by virtue of his aforesaid wrongful conduct.

9. Defendant's continued violation of the foregoing contractual covenant will result in irreparable harm to CHEMTREAT for which there is no adequate remedy at law.

10. Pursuant to the terms of the Employment Agreement, GREGORY P. KINSMAN, is responsible to reimburse CHEMTREAT for all costs and attorneys' fees incurred as a result of any breach and/or enforcement thereof.

WHEREFORE, Plaintiff CHEMTREAT, INC., a Virginia corporation, prays that this Court enter a temporary and permanent injunction against the Defendant, GREGORY P. KINSMAN, as follows:

a. Enjoining Defendant from soliciting, calling upon, communicating with, entering into any sales or servicing agreements with, or attempting to communicate with any person or entity that is a customer of CHEMTREAT (or any representative of such person or entity) with whom Defendant had any contact, communication, or for which he had supervisory, sales or service responsibility during any of the eighteen (18) consecutive calendar months preceding his termination of employment with CHEMTREAT for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, service or equipment competitive with any product, service or equipment sold, offered for

7

sale, provided or under development by CHEMTREAT, either for his own benefit or on behalf of any other person or entity;

b.    Enjoining Defendant from soliciting, calling upon, communicating with, entering into any sales or servicing agreements with, or attempting to communicate with any person or entity (a representative of such entity) for which Defendant performed or participated in a survey or written proposal during the twelve (12) consecutive calendar months preceding his termination of employment with CHEMTREAT for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, service or equipment competitive with any product, service or equipment sold, offered for sale, provided or under development by CHEMTREAT, either for his own benefit or on behalf of any other person or entity;

c.    Enjoining Defendant, GREGORY P. KINSMAN, from disclosing to any persons or entities any information relating to inventions, products, product specification, processes, procedures, prices, discounts, manufacturing costs, business affairs, future plans, technical data, customer lists, product formulations, marketing techniques and cost data received or learned by him during his course of his employment with CHEMTREAT;

c.    Enjoining Defendant, GREGORY P. KINSMAN, from engaging in any business or other endeavor in competition with CHEMTREAT; and

d.    For such other and further injunctive relief as the Court deems warranted.

e.    For recovery of its costs of suit, including the reasonable attorneys' fees incurred.

*PLAINTIFF DEMANDS TRIAL BY JURY.*

## COUNT VI

### (INTENTIONAL INTERFERENCE WITH CONTRACT - MICHELLE KINSMAN)

For Count VI of its cause of action, against Defendant, MICHELLE M. KINSMAN, states as follows:

1-5.    CHEMTREAT repeats and re-alleges paragraphs 1 through 5 of Count I of its cause of action as and for paragraphs 1 through 5 of Count VI of its cause of action, against MICHELLE M. KINSMAN.

6.    At all relevant times, MICHELLE M. KINSMAN was aware of the existence of a valid and enforceable Employment Agreement between her husband and CHEMTREAT.

8

7.    Despite knowledge of the existence of a valid Employment Agreement between her husband and CHEMTREAT, MICHELLE M. KINSMAN intentionally and willfully interfered with said contractual relationship in one or more of the following ways:

    a.    Conspired with her husband to create a business, RHEMA, for the sole purpose of competing with CHEMTREAT;

    b.    Conspired with, and induced her husband to call upon existing customers of CHEMTREAT for the purpose of diverting the business to RHEMA;

    c.    Conspired with, and induced her husband to call upon prospective customers of CHEMTREAT for the purpose of procuring said business for herself and RHEMA;

    e.    Conspired with, and induced her husband to disclose proprietary and technical product specifications of CHEMTREAT for the purpose of filling orders for CHEMTREAT customers which had been diverted to RHEMA; and

    f.    Coerced and induced her husband to otherwise breach the Employment Agreement with CHEMTREAT for her own benefit.

8.    As a direct and proximate result of the conduct of MICHELLE KINSMAN, her husband, GREGORY P. KINSMAN, breached his Employment Agreement with CHEMTREAT.

9. As a direct and proximate result of the conduct of MICHELLE KINSMAN CHEMTREAT sustained damages in the form of past and future lost sales, income and profits and has sustained damage to its business reputation and good will.

WHEREFORE, Plaintiff, CHEMTREAT, INC., a Virginia corporation, prays for judgment in its favor and against the Defendant, MICHELLE M.KINSMAN, for an amount in excess of $75,000 in compensatory damages and punitive damages in the amount of $250,000 plus costs of suit.

*PLAINTIFF DEMANDS TRIAL BY JURY.*

## COUNT VII

### (INTENTIONAL INTERFERENCE WITH CONTRACT - RHEMA)

For Count VII of its cause of action, against Defendant RHEMA, CHEMTREAT states as follows:

1-5.    CHEMTREAT repeats and re-alleges paragraphs 1 through 5 of Count I of its cause of action as and for paragraphs 1 through 5 of Count VII of its cause of action, against RHEMA.

6.    At all relevant times, RHEMA, by and through its principal, members and/or employees, was aware of the existence of a valid and enforceable Employment Agreement between GREG KINSMAN and CHEMTREAT.

7.    Despite knowledge of the existence of a valid Employment Agreement between GREG KINSMAN and CHEMTREAT, RHEMA, by and through its principal, members and/or employees, intentionally and willfully interfered with said contractual relationship in one or more of the following ways:

      a.    Conspired to create a business, RHEMA, for the sole purpose of competing with CHEMTREAT;

      b.    Conspired with, and induced GREG KINSMAN to call upon existing customers of CHEMTREAT for the purpose of diverting the business to RHEMA;

      c.    Conspired with, and induced GREG KINSMAN to call upon prospective customers of CHEMTREAT for the purpose of procuring said business for RHEMA;

      e.    Conspired with, and induced GREG KINSMAN to disclose proprietary and technical product specifications of CHEMTREAT for the purpose of filling orders for CHEMTREAT customers which had been diverted to RHEMA; and

      f.    Coerced and induced GREG KINSMAN to otherwise breach the Employment Agreement with CHEMTREAT for its own benefit.

8.    As a direct and proximate result of the conduct of RHEMA, by and through its principal, members and/or employees, GREGORY P. KINSMAN, breached his Employment Agreement with CHEMTREAT.

9.    As a direct and proximate result of the conduct of RHEMA, CHEMTREAT sustained damages in the form of past and future lost sales, income and profits and has sustained damage to its business reputation and good will.

WHEREFORE, Plaintiff, CHEMTREAT, INC., a Virginia corporation, prays for judgment in its favor and against the Defendant, RHEMA ELPIS ENTERPRISES L.L.C., for an amount in excess of $75,000 in compensatory damages and punitive damages in the amount of $250,000 plus costs of suit.

*PLAINTIFF DEMANDS TRIAL BY JURY.*

## COUNT VIII

### (AIDING AND ABETTING INTERFERENCE WITH BUSINESS RELATIONSHIPS)

For Count VIII of its cause of action, against MICHELLE M.KINSMAN and RHEMA, CHEMTREAT states as follows:

1-10.    CHEMTREAT repeats and re-alleges paragraphs 1 through 10 of Count II of its cause of action as and for paragraphs 1 through 10 of Count VIII of its cause of action against MICHELLE M.KINSMAN and RHEMA

11.    Defendants, MICHELLE M.KINSMAN and/or RHEMA, aided and abetted GREG KINSMAN in intentionally interfering with CHEMTREAT'S business relationships by participating in the creation of a business, RHEMA, for the sole purpose of competing with CHEMTREAT and diverting its customers.

12.    Defendants, MICHELLE M.KINSMAN and/or RHEMA, by and through its principal, members and/or employees, were at all times aware that they were participating and assisting in the tortious activities of GREG KINSMAN.

WHEREFORE, Plaintiff CHEMTREAT, INC., a Virginia corporation, prays for judgment in its favor and against Defendant, MICHELLE M.KINSMAN and RHEMA, for compensatory damages in an amount in excess of $75,000 and for punitive damages in the amount of $250,000, together with its costs of suit.

*PLAINTIFF DEMANDS TRIAL BY JURY.*

## COUNT IX

**(AIDING AND ABETTING BREACH OF FIDUCIARY OBLIGATION)**

For Count IX of its cause of action, against MICHELLE M.KINSMAN, CHEMTREAT states as follows:

1-9.    CHEMTREAT repeats and re-alleges paragraphs 1 through 9 of Count III of its cause of action as and for paragraphs 1 through 9 of Count VIII of its cause of action, against MICHELLE M.KINSMAN.

10.    Defendant, MICHELLE M.KINSMAN, aided and abetted her husband in breaching his fiduciary obligations to CHEMTREAT by conspiring with him to create a business, RHEMA, for the sole purpose of competing with CHEMTREAT and diverting its existing and potential prospective customers.

11.    Defendant, MICHELLE M.KINSMAN, was at all times aware that she was participating in assisting in the tortious activities of her husband.

WHEREFORE, Plaintiff, CHEMTREAT INC., a Virginia corporation, prays for judgment in its favor and against Defendant, MICHELLE M.KINSMAN, individually and d/b/a/ RHEMA, for compensatory damages in an amount in excess of $75,000 and for punitive damages in the amount of $250,000 together with its costs of suit.

*PLAINTIFF DEMANDS TRIAL BY JURY.*

## COUNT X

**(AIDING AND ABETTING BREACH OF FIDUCIARY OBLIGATION - CONSTRUCTIVE TRUST AND INJUNCTIVE RELIEF)**

For Count X of its cause of action, against Defendants, MICHELLE M.KINSMAN and RHEMA, CHEMTREAT states as follows:

1-8.    CHEMTREAT repeats and re-alleges paragraphs 1 through 8 of Count IV of its cause of action as and for paragraphs 1 through 8 of Count X of its cause of action, against MICHELLE M.KINSMAN and RHEMA.

12

9.      Defendant, MICHELLE M.KINSMAN, aided and abetted her husband in breaching his fiduciary obligations to CHEMTREAT by conspiring with him to create a business, RHEMA, for the sole purpose of competing with CHEMTREAT and diverting its existing and potential prospective customers.

11.     Defendant, MICHELLE M.KINSMAN, was at all times aware that she was participating in assisting in the tortious activities of her husband.

12.     CHEMTREAT is at this point unable to accurately calculate the amount of the damages it has incurred as result of Defendants' actions due to the fact that the sales records of the customers diverted by Defendants are currently in Defendants' possession and the full extent of Defendants' wrongful conduct has not yet been fully determined.

WHEREFORE, Plaintiff, CHEMTREAT INC., a Virginia corporation, prays for the following equitable relief:

a.      For the imposition of a constructive trust upon all proceeds realized by MICHELLE M.KINSMAN, and RHEMA from sales to CHEMTREAT'S existing and prospective customers in violation of GREGORY P. KINSMAN'S fiduciary duty;

b.      For the imposition of a constructive trust upon any proceeds realized by MICHELLE M.KINSMAN, and/or RHEMA as a result of any business activities deemed to be in competition with CHEMTREAT;

c.      For a permanent injunction against Defendant, MICHELLE M.KINSMAN, and RHEMA, enjoining them from continuing to sell to, service or otherwise conduct business with the customers, and prospective customers, of CHEMTREAT which were diverted as a result of Defendant, GREGORY P. KINSMAN'S breach of his fiduciary duties; and

c.      For such other and further relief as the Court deems just and reasonable.

CASSIDY & MUELLER


By: s/   Andrew D. CASSIDY
        Attorneys for the Plaintiff,
        CHEMTREAT, INC., a Virginia corporation

Andrew D. Cassidy
CASSIDY & MUELLER
323 Commerce Bank Bldg.
416 Main Street
Peoria, Illinois 61602

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 30, 2006, I electronically filed the foregoing Amended Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

             Kevin Wolfe                   jkwolfe@hslaw.us

            s/       ANDREW D. CASSIDY
                    CASSIDY & MUELLER
                    416 Main Street, Suite 323
                    Peoria, IL 61602
                    Telephone: 309/676-0591
                    Fax: 309/676-8036
                    E-mail: dcassidy@cassidymueller.com

**E-FILED**
Thursday, 30 March, 2006  08:47:44 AM
Clerk, U.S. District Court, ILCD

# EMPLOYMENT AGREEMENT

THIS AGREEMENT by and between CHEMTREAT, INC., a Virginia corporation ("CHEMTREAT") and Gregory P. Kinsman ("Employee") recites and provides as follows:

WHEREAS, CHEMTREAT is engaged in the business of selling and distributing chemicals, chemical products and other miscellaneous products at retail or wholesale and servicing equipment which uses or consumes products sold by CHEMTREAT; and

WHEREAS, Employee is desirous of working for CHEMTREAT in whatever capacity as may be determined by the Board of Directors of CHEMTREAT;

NOW, THEREFORE, in consideration of the employment relationship created hereby, the remuneration paid hereunder, and the mutual covenants and conditions hereinafter set forth, CHEMTREAT and Employee agree as follows:

1.    **Employment**

CHEMTREAT hereby employs Employee to conduct the business of CHEMTREAT with those customers and prospective customers of CHEMTREAT as designated by CHEMTREAT and/or developed by Employee. Employee covenants and agrees that he will devote his entire time and energy exclusively to the business of CHEMTREAT and that during the period of his employment, he will not engage in any other business, either for himself or for the account of any other person, firm or corporation without the prior consent of the Board of Directors of CHEMTREAT.

2.    **Compensation**

For all services to be rendered by Employee in any capacity hereunder, CHEMTREAT agrees to pay Employee such compensation as may be mutually agreed upon between Employee and CHEMTREAT from time to time.

1

3.    <u>Termination of Previous Employment Agreements</u>

Employee does hereby represent and warrant that he has the right to enter into this contract and that he has terminated all previous employment agreements and is free from any previous employment contracts, except for post-termination covenants not to compete, if any, and restrictions on disclosure of confidential information.

4.    <u>Termination</u>

Employee may resign and CHEMTREAT may terminate Employee at any time with or without cause by giving the other party written notice of termination. Termination is effective upon receipt by the non-terminating party of the written notice of termination. No commissions or compensation shall be payable to Employee by CHEMTREAT for sales or services (or any portion thereof) which are not delivered or performed as of the effective date of Employee's termination of employment with CHEMTREAT.

If Employee dies while this Agreement is in effect, the Agreement shall automatically terminate on the date of Employee's death, and CHEMTREAT shall be obligated to pay to Employee's estate Employee's monthly compensation or commissions computed as though Employee died on the last day of the month in which his death occurs.

The provisions of this Agreement contained in Paragraphs 6 through 11 hereof, as applicable, shall survive any termination of employment described herein.

5.    <u>Disability</u>

In the event the Employee suffers a permanent, total disability as determined by a physician selected by the Company, this Agreement shall automatically terminate ninety (90) days after the date said physician determines that the employee became disabled. In such event, CHEMTREAT shall be obligated

2

to pay Employee his monthly compensation or accrued commissions up to the date of termination.

6.     **Non-Compete Agreement**

The parties hereto acknowledge that CHEMTREAT is engaged in the business of the sale of equipment and chemical formulations for treatment of boilers, cooling towers, heating and cooling systems, raw water and waste water systems and the sale of fuel oil treatments and providing servicing activities incidental to the sale of the above products. Employee hereby acknowledges that during the course of his employment he has or will receive or have access to certain confidential and proprietary information which is essential to the sales and service activities of CHEMTREAT including, but not limited to, selling methods, price sheets and product manuals. Employee hereby further acknowledges that the customers of CHEMTREAT constitute a valuable asset to CHEMTREAT and that CHEMTREAT has legitimate business interests to protect by the restrictions contained herein.

During the eighteen (18) month period following the effective date of termination by either party of the employment relationship created hereunder, Employee shall not in his own name, or as a consultant, or in any other capacity on behalf of any other person or entity solicit, call upon, communicate with, enter into any sales or servicing agreements with, or attempt to communicate with any CHEMTREAT customer or prospective customer, as defined herein, for the purpose of selling, offering for sale, influencing the purchase of, or otherwise providing any product, service or equipment competitive with any product, service or equipment then sold, offered for sale, provided, or under development by CHEMTREAT.

For the purposes of this Agreement, "customer" shall mean any person or entity that is a customer of CHEMTREAT (or any representative of such person or entity) with whom Employee had any contact, communication, or for which Employee had supervisory, sales or service responsibility during any of the eighteen

3

(18) consecutive calendar months preceding the effective date of termination of his CHEMTREAT employment. For the purposes of this Agreement, "prospective customer" shall mean any person or entity (or representative or such person or entity) for which Employee performed or participated in a survey or written proposal during the twelve (12) consecutive calendar months preceding termination of Employee's employment with CHEMTREAT.

Employee further agrees that the above restrictions upon him are reasonable in all respects including the description of CHEMTREAT's business and the time, customer, and prospective customer restrictions. Employee further expressly acknowledges that such restrictions will not unreasonably restrict him in earning a livelihood.

7. <u>**Interference With Contractual Relations**</u>

For the eighteen (18) consecutive calendar months immediately following the effective date of termination of Employee's CHEMTREAT employment, Employee agrees that he shall not induce, encourage, or solicit any other employee of CHEMTREAT to terminate his employment with CHEMTREAT.

8. <u>**Injunctive Relief**</u>

Employee acknowledges and agrees that it would be difficult to quantify or to fully compensate CHEMTREAT in damages for the breach of Employee's obligations hereunder. Accordingly, Employee specifically agrees that CHEMTREAT shall be entitled to temporary and permanent injunctive relief to enforce the provisions of this Agreement and that such relief may be granted without the necessity of proving actual damages or irreparable injury or harm. Nothing contained herein, however, shall diminish the right of CHEMTREAT to claim and recover damages as appropriate.

9.    **Attorneys' Fees**

In the event CHEMTREAT files suit against Employee to enforce any provision of this Agreement and a court of competent jurisdiction finds in favor of CHEMTREAT, Employee shall reimburse CHEMTREAT its reasonable costs and attorneys' fees incurred in maintaining such suit.

10.    **Miscellaneous**

This Agreement shall not be binding until signed by an officer of CHEMTREAT at its corporate offices in Richmond, Virginia.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legatees, devisees, administrators, executors, successors and assigns, and its terms shall not be amended except by a writing signed by both parties.

If any portion of this contract shall be determined unenforceable by a court of competent jurisdiction, the remaining provisions of this Agreement shall remain in full force and effect. If any of the covenants or restraints provided in this Agreement are adjudicated to be excessively broad or otherwise unenforceable, said covenant or restraint shall be reduced to and enforced to whatever extent deemed reasonable by said court.

Employee acknowledges that he was provided an unsigned copy of this Agreement in advance of accepting initial employment or continued employment and was accorded ample opportunity to read and seek whatever counsel relative to the Agreement he deemed necessary.

11.    **Governing Law**

This Agreement is made in, and shall be construed under and governed by the laws of, the Commonwealth of Virginia exclusive of its choice of law provisions.

IN WITNESS WHEREOF, Employee has read, understood and duly executed this Agreement, and CHEMTREAT, INC., has caused this Agreement to be executed in its name and on its behalf by its duly authorized officers.

CHEMTREAT, INC.

Date: <u>August 17, 1995</u>          By: _____
                                          Harrison R. Tyler, President

Date: <u>August 17, 1995</u>          EMPLOYEE:

                                      _____
                                          Signature

                                      _____
                                          Print Name

6

## TRADE SECRETS AND CONFIDENTIALITY AGREEMENT

In consideration of my employment by ChemTreat, Inc. (Corporation) and of the salary and wages paid to me in connection with such employment, and other good and valuable consideration, I agree as follows:

1.    I recognize that the Corporation has a substantial investment in its development and use of commercially valuable technical and nontechnical information which the Corporation desires to protect by patents or by holding such information secret or confidential. Such proprietary information is vital to the success of the Corporation's business. I also recognize that during my employment, I will receive, develop or otherwise acquire such secret or confidential technical and nontechnical information. Except as authorized in writing by the Corporation, I will not disclose to persons not employed by the Corporation or to those persons employed by the Corporation to whom disclosure has not been previously approved by the president or any vice president of the Corporation, or use directly or indirectly, during or after my employment with the Corporation, any information of the Corporation I obtain during the course of my employment relating to inventions, products, product specifications, processes, procedures, prices, discounts, manufacturing costs, business affairs, future plans, technical data, customer lists (customer lists to include among other things customer requirements, products purchased by customers, and customer contacts and other business information pertaining to such customer), product formulations, marketing techniques and cost data. The foregoing sentence shall not be construed to apply to the direct or indirect use of information by employees of the Corporation in the performance of their duties and responsibilities during the course of their employment by the Corporation. This agreement also covers other information which is of a secret or confidential nature (whether or not acquired or developed by me) designated from time to time by the Corporation as being proprietary, trade secret or confidential information.

2.    Upon termination of my employment, for any reason, I shall not remove or retain without the Corporation's prior written consent any figures, calculations, letters, papers, drawings, reports, financial statements, product specifications, customer lists, product formulations, cost data or other confidential information of any type or description, or copies, summaries or extracts thereof, and I shall promptly return to the Corporation all such items which may be in my possession or control at the time of termination of my employment, other than information and documents belonging to me that were prepared or created prior to my employment by the Corporation which I shall be entitled to retain after termination of my employment.

3.    I will communicate to the Corporation promptly and fully all discoveries, improvements, processes, devices and inventions (hereinafter collectively called "inventions") made, discovered, conceived or developed by me

7

(either solely or jointly with others) during my employment and for six months thereafter which may be useful in or relate to the lines of the actual or anticipated business, work or investigations of the Corporation or which result from or are suggested by any work I may do for the Corporation; and such inventions, whether patented or not, shall be and remain the sole and exclusive property of the Corporation or its nominees or assigns.

4.    I will keep and maintain adequate and current written records of all such inventions, in the form of notes, sketches, drawings and reports relating thereto, which records shall be and remain the property of and available to the Corporation at all times. All such records shall remain on the premises of the Corporation at all times. Further, during and after my employment, without charge to the Corporation but at its request and expense, I will assist the Corporation and its nominees in every proper way to obtain and vest in it or them title to patents or such inventions in all countries by executing all necessary or desirable documents, including applications for patents and assignments thereof. I understand that as consideration for my assignment of any patent to the Corporation I will receive a cash bonus within the then current fiscal year of the Corporation.

5.    I understand and agree that in the event of any breach, violation or evasion of the terms of this agreement, any such breach, violation or evasion will result in immediate and irrevocable injury or harm to the Corporation and the Corporation shall be entitled to equitable and legal relief to protect its interest, including the recovery of its costs, expenses and attorney's fees in pursuing any such remedies.

6.    This agreement shall be construed according to the laws of the State of Virginia, and shall be binding upon my heirs, legal representatives and assigns and shall inure to the benefit of any successors and assigns of the Corporation.

7.    It is our intention that the provision of this agreement be enforceable to the fullest extent permissible under applicable law, and that unenforceability (or modification to conform to applicable law) of any provision, in whole or in part, shall not render unenforceable, or impair, the remainder of this agreement which shall be deemed to be amended to delete or modify, as necessary, the offending provision and to alter the balance of this agreement in order to render it valid and enforceable.

CHEMTREAT, INC.

BY: _Hanson Wyly_

_Gregory P. Kinsman_
Employee's Signature

Date:_August 17, 1995_

8