**E-FILED**
Wednesday, 30 August, 2006  09:21:50 AM
Clerk, U.S. District Court, ILCD

U.S. DISTRICT COURT
FOR CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| CHEMTREAT, INC. a Virginia corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  05 CV 1336 |
| | ) | |
| GREGORY P. KINSMAN, MICHELLE M. KINSMAN and RHEMA ELPIS ENTERPRISES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO
MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, CHEMTREAT, INC. a Virginia corporation, by its attorneys, Cassidy & Mueller, and in Reply to Defendant's Response to Motion for Summary Judgment state as follows:

**I.**

**RESPONSE TO DEFENDANT'S STATEMENT MATERIAL FACTS**

1.      Denied.  Tom Moshage testified that he didn't think of RHEMA as a competitor of CHEMTREAT *"at the time"* that GREG KINSMAN first mentioned it. However, the testimony clearly establishes that the RHEMA quote was for the purpose of providing "competitive pricing" for the products currently being sold by CHEMTREAT.

2.      Denied.  Tom Moshage testified that he received no other bids "at that time" (dep. pg. 29), but that he had an old bid from Garret Callahan. (Dep. pg. 31).

3.      Admitted.

4.      Admitted.

5.      Denied.  Tom Moshage testified that in March 2004 he did not have any other current competitive quotes. (Dep. pg. 29, 31). He further testified that he will stay with a current supplier until he receives better pricing from a competitor. (Dep. pg. 32). It necessarily follows therefore, that but-for the actions of Defendants in undercutting CHEMTREAT'S pricing, Carus would have continued until another supplier gave a better price - which had not occurred at any time between March 2004 and the date of Moshage's deposition. (Dep. pg. 29, 31, 32, 33).

6.      Admitted in part, disputed in part. Business with a current supplier would terminate only if presented with a better price elsewhere. Otherwise, he stays with his supplier. (Moshage dep. pg. 32).

7.      Denied.  Each of the companies told GREG KINSMAN that they were going to seek competitive bids and, in most cases, offered him a chance to be a part of that bid process on behalf of CHEMTREAT. (G. Kinsman Dep. Pgs 116-118, 119 & 121).

8.      Admitted.

## II.
## ARGUMENT

### COUNT I

Count I of Plaintiff's Complaint alleges Defendant's (1) breach of the terms of his Employment Agreement while still employed, (2) a breach of the Trade Secrets and Confidentiality Agreement while still employed and (3) a breach of the post-employment covenant not to compete. In support of each of the alleged breaches Plaintiff has outlined a consistent course of conduct by KINSMAN designed to divert his CHEMTREAT customers to RHEMA - complete with citations to the testimony and documentary evidence which makes up the present record. Defendant's Response wholly fails to overcome that evidence or Plaintiff's entitlement to Summary Judgment.

## A.

## <u>EMPLOYMENT AGREEMENT</u>

Defendant contends that there is a question of fact as to whether or not KINSMAN'S conduct (apparently undisputed) constitutes a breach of the terms of the contract. In that regard, KINSMAN suggests that this Court cannot find that he "engaged in other business" during his employment, in violation of the terms of his Employment Agreement, unless the evidence establishes a regular and continuous course of dealing rather than some irregular or isolated transactions. In support of this contention, KINSMAN cites <u>Young v. Town of Vienna, Va</u>, 203 Va 265, 123 S.E.2d 388 (Va 1962) for the proposition that Virginia law recognizes such a narrow interpretation of the term "engage in business". Defendant's reliance upon <u>Young</u> is misplaced and is contrary to the well established rules of contract construction.

<u>Young</u> is a statutory interpretation case involving a local tax ordinance which imposed a levy upon every person who should "engage in the business of renting commercial property". The tax was levied upon Young as a result of having leased a single parcel of land for a term of twenty-five years to an oil company for use as service station. In determining that the tax was improperly levied upon Young, the Supreme Court of Appeals of Virginia repeatedly stated that the strict construction standard of review employed was that applied to the interpretation of taxing statutes and/or ordinances. There is no indication in that opinion that a similar standard would apply to a routine contract construction case like the one before this Court. Indeed, despite having been issued forty-four years ago no other Court has ever cited <u>Young</u> as authority for anything other than the proper construction of taxing statutes and/or ordinances.

Apparently recognizing this fatal limitation of <u>Young</u> as applicable authority, Defendant goes on to cite <u>Linville v. Servisoft of Virginia, Inc.</u>, 211 VA 53, 174 S.E.2d 785 (Va 1970) in an

attempt to suggest that a similar analysis was applied to the construction of a post-employment covenant not to compete. In so doing, Defendant misconstrues the holding of <u>Linville</u>.

Initially, it should be noted that neither <u>Young</u>, nor any other case involving the limited definition of the term "engaged in business" when used in a statute or ordinance, is cited by the <u>Linville</u> Court. Moreover, the decision in <u>Linville</u> did not in any way turn on the interpretation of the term "engage in business" as suggested by Defendant. Rather, in that case a former employee attempted to start a competing water treatment business as a sole proprietor, in the face of a covenant which provided "*that he will not seek or accept employment with any other competitive business* …". Employing the usual rules of contract construction the Court determined that the plain language of the contract precluded seeking or accepting *employment* with a competitor, not from engaging in a competitive business as a sole proprietor. Being a case which was decided solely upon the specific contract language employed, <u>Linville</u> has no applicability to the present action - other than confirming that the present case should be decided by the application of well established rules of contract construction.

Under Virginia law, the Court seeks to determine the intent of the parties from the language expressed in the contract. If the terms of the contract are clear and unambiguous, those terms must be afforded their plain and ordinary meaning. <u>Providence Square Associates L.L.C. v. G.D.F. Incorporated</u>, 211 F.3d 846, 850 (4th Cir. 2000). In the present case, the Employment Agreement provides, in relevant part, as follows:

> … Employee covenants and agrees that he will devote his entire time and energy exclusively to the business of CHEMTREAT and that during the period of his employment he will not engage in any other business, either for himself or for the account of any other person … (Ex. 1, pg. 1).

In order for this Court to accept Defendant's proposed interpretation of this language - i.e. only violated if KINSMAN engaged in regular and continuous course of dealing for purpose of earning a livelihood - it would have to ignore all but a select few of the words employed. The plain and ordinary meaning of "*will devote his _entire_ time and energy _exclusively_ to the business of CHEMTREAT*" clearly precludes any involvement in a competing business, not just full time competition as is suggested by Defendant. Additionally, the language which precludes competition "either for himself or for the account of any other person" is entirely inconsistent with Defendant's contention that a breach occurs only if KINSMAN is so engaged for the purpose of earning a livelihood. Contrary to the applicable rules of construction, Defendant seeks to have this Court look only at the "engage in business" language to the exclusion of all other terms, and then apply unrelated case law in order to rule that that limited language does not apply. Such a construction would be tantamount to rewriting the contract.

One of the applicable principals of contract construction under Virginia law is that a contract should not be construed so as to achieve an absurd result. Providence Square Associates, L.L.C. v. G.D.F. Incorporated, 211 F.3d 846, (4th Cir. 2000). However, in direct conflict with this principal, Defendant's proposed interpretation would achieve the absurd result of allowing KINSMAN to "moonlight" as a direct competitor to the company that is paying him as a full time employee and to which he owes a duty of undivided loyalty. Clearly that was not the intention of the parties to this contract and would constitute an unreasonable interpretation.

It is noteworthy that Defendant in his Response did not attempt to refute the conduct outlined in Plaintiff's Motion but rather, merely argued that it did not constitute a breach of the contract - as interpreted by Defendant. As such, Defendant acknowledges that he engaged in the

allegedly wrongful conduct. It is respectfully submitted that under any reasonable interpretation of the contract terms, said conduct constitutes a breach thereof.

**B.**

**TRADE SECRETS AND CONFIDENTIALITY AGREEMENT**

The Trade Secrets and Confidentiality Agreement which is included in the Employment Agreement expressly precludes the disclosure either during or after employment, of any information "*relating to … products, product specifications, processes, procedures, prices, discounts, manufacturing costs, business affairs, … customer lists … and cost data*". In its Motion for Summary Judgment Plaintiff has set forth the evidence in the record which establishes that GREGORY KINSMAN provided product and/or pricing information to his wife for the purpose of being able to submit to Carus Chemical Company a competitive bid which included side-by-side comparisons as to the pricing that RHEMA could provide in order to undercut CHEMTREAT'S prices. Defendant responds to this evidence simply by suggesting that *it is equally as inferable that Tom Moshage (of Carus Chemical Company) could have provided the pricing information*. In support of this contention, Defendant merely speculates as to the motivations of Tom Moshage without providing any citations whatsoever to the record to support those speculative statements.

Contrary to Defendant's contention that Tom Moshage didn't remember if he had provided the pricing information to MICHELLE KINSMAN, Tom Moshage testified as follows:

Q. Do you know how many times you might have spoken to MICHELLE KINSMAN between the date of your initial phone conversation with her and the submission of this price quote?

A. Twice.

Q. During those discussions did you ever provide her with pricing information that you were currently paying to CHEMTREAT?

A.    No.

Q.    Did you ever advise her that - that CHEMTREAT was raising their prices?

A.    No.

Q.    I assumed then that you didn't specifically tell her that the price increase would be 6%, if you didn't tell her that there was any increase?

A.    I didn't know what the increase was going to be from CHEMTREAT.

Q.    Would it be fair to say then that this letter wherein she shows your current supplier, the current supplier's old price, the current supplier's new price, and RHEMA'S price would be information that she gained from some source other than you?

A.    I have no idea how she got the information.
       (Moshage dep. pg. 18-19)

…

Q.    When you [get price quotes] and maybe ask a couple of sales reps to send in some pricing, do you give them your current pricing information?

A.    Never.
       (Moshage dep. pg. 41).

Thus, this is not a situation where GREGORY KINSMAN has specifically denied providing the pricing information to his wife while Tom Moshage stated that he didn't remember. Rather, Tom Moshage has specifically and unequivocally denied providing any of CHEMTREAT'S prices to competitors for the purposes of obtaining competitive quotes. In the context of this unequivocal denial, the only reasonable inference is that the information came from GREGORY KINSMAN and his mere denials are insufficient to raise a genuine issue for trial. Howland v. Kilquist, 833 F.2d 639 (7th Cir. 1987).

       In addition to Tom Moshage's express denials, the quotation letter (Moshage dep. Ex. No. 1) contains information that Mr. Moshage could not possibly have provided. The quotation

letter included not only the current price that Carus Chemical Company was paying but also included a column showing what the "new price" would be after an anticipated price increase from CHEMTREAT. As previously set forth herein, Mr. Moshage testified that he had no knowledge as to what the increase from CHEMTREAT was going to be. Moreover, GREGORY KINSMAN has testified that CHEMTREAT only sets costs and that the ultimate price to the customer is solely determined by the sales rep. (G. Kinsman dep. pg. 115). Thus even if Moshage knew what the cost increase was it could have no bearing on the ultimate price that GREGORY KINSMAN might elect to use. Consequently, Moshage could not have provided the information to MICHELLE KINSMAN and MICHELLE KINSMAN could not have calculated the future price absent having obtained the information from GREGORY KINSMAN.

Finally, each of the four chemical products for which RHEMA was submitting a quote was identified by the CHEMTREAT product number. (Moshage dep. pg. 27; Michelle Kinsman dep. pg. 53-54). It is simply inconceivable that MICHELLE KINSMAN - having absolutely no training in the water treatment chemical business - could prepare a quotation which included CHEMTREAT'S current and future pricing information, and identified by CHEMTREAT'S in-house product numbers, without the intimate involvement of her husband. Defendant's protestations to the contrary in his Response are unsupported by any evidence in the record and are insufficient to raise a material question of fact.

## C.

## POST EMPLOYMENT COVENANT NOT TO COMPETE

Again, Plaintiff in its Motion for Summary Judgment has cited to testimony and documentary evidence which conclusively establishes that GREG KINSMAN was acting on behalf of RHEMA after his termination of employment with CHEMTREAT - and was doing so

with respect to his former customers. In response, KINSMAN makes no reference to any portions of the record but rather, merely asks the Court to accept unlikely inferences from the record. For instance, KINSMAN suggests that "*nothing in the Monmouth College e-mail correspondence indicates that Mr. Kinsman is doing any business on behalf of RHEMA or that the inspection was not something that he had previously promised or said that he would do for Monmouth College*". The referenced e-mail (Ex. 6) is dated October 25th and conclusively establishes a boiler inspection having been performed by GREGORY KINSMAN on the prior day. While Defendant's interpretation is technically correct, irrespective of whether or not the boiler inspection and suggested remedial measures were done on behalf of RHEMA it is clear that KINSMAN was engaging in the business. There is nothing contained in the post-employment covenant not to compete which limits improper competition to that done on behalf of RHEMA and surely KINSMAN is not asking this Court to accept that he was continuing to perform services for CHEMTREAT, which had previously terminated him.

Other than the foregoing, the Response does not in any way challenge the clear evidence that GREG KINSMAN was accepting orders from customers, calling them into the supplier, Ulrich Chemical, and otherwise, dealing directly with the Ulrich - on behalf of RHEMA.

Defendant has failed to meet his burden to come forward with specific evidence (not mere allegations or denials of the pleadings) which demonstrates that there is a genuine issue for trial. The affidavits, depositions and documentary evidence in the record conclusively establish that (1) Defendant was actively engaged in the business of RHEMA while still employed by CHEMTREAT, (2) improperly disclosed confidential/proprietary pricing information to his wife for the purpose undercutting CHEMTREAT'S prices and (3) continued to call upon his former CHEMTREAT customers following his termination of employment - all in violation of the

various provisions of the Employment Agreement, Trade Secrets and Confidentiality Agreement and Covenant Not to Compete. As such, it is respectively submitted that Plaintiff is entitled to summary judgment in its favor and against the Defendant, GREGORY KINSMAN, as to the issue of liability under Count I of the Complaint.

## COUNT II

Count II is a cause of action against GREGORY KINSMAN for intentional interference with CHEMTREAT'S business relationships with its customers. The elements of such a cause of action are as follows:

1.       The existence of a valid business relationship;

2.       Defendant's knowledge of plaintiff' relationship;

3.        A purposeful interference by defendant that causes a breach or termination of the relationship; and

4.       Damages to the plaintiff.
         <u>Dowd & Dowd. Ltd. v. Gleason</u>, 352 Ill.App.3d 365, 380 (1st Dist. 2004).

Defendant argues that each of the customers referred to RHEMA had previously terminated their business relationship with CHEMTREAT and therefore, neither of the first two elements of such a cause of action have been met. Further, Defendant contends that because of the prior termination of the business relationship with CHEMTREAT nothing he did influenced the decision to go with RHEMA and thus Plaintiff has failed to establish a "purposeful interference". This contention is contrary to the applicable law and to the factual record in this case.

It is undisputed that GREGORY KINSMAN referred various CHEMTREAT customers to RHEMA for the stated purpose of obtaining competitive quotes to replace the CHEMTREAT chemicals which were being purchased. Consequently, the only remaining material issue is

10

whether or not those various companies continued to be customers of CHEMTREAT at the time that the referral was made. In that regard, Illinois law includes a presumption that the business relationship will continue until terminated. <u>Dowd & Dowd</u>, 352 Ill.App.3d at 381; <u>Grund v. Donegan</u>, 298 Ill.App.3d 1034, 1038 (1st Dist. 1998). The burden upon Defendant therefore, is to overcome that presumption by presenting specific evidence which would establish that the existing business relationship had terminated prior to the referral to RHEMA. It is respectfully submitted that the unsupported contentions of Defendant in his Response are insufficient to meet that burden of proof. Moreover, the testimony of GREGORY KINSMAN conclusively establishes otherwise.

The initial competitive quote to Carus Chemical Company consisted of a March 12, 2004 written letter to Tom Moshage. The quote was submitted by RHEMA as a result of the referral made by GREGORY KINSMAN. It is unclear in the record as to when that referral was made but it has been established that subsequent to the referral two separate conversations between Tom Moshage and MICHELLE KINSMAN took place. Consequently, the referral must have taken place no later than early March 2004. According to GREGORY KINSMAN'S own testimony Carus Chemical Company continued to be one of his CHEMTREAT customers during March 2004. (G. Kinsman dep. pg. 96-97). This would clearly include the timeframe when the referral from GREGORY KINSMAN to RHEMA took place.

Moreover, GREGORY KINSMAN'S sworn testimony in this case as to how the referral took place merely reflects that Tom Moshage of Carus Chemical Company advised that they were putting the chemicals out for bids. (G. Kinsman dep. pg. 119). Tom Moshage's deposition testimony as to this series of events is consistent and established that an ongoing relationship continued. As recounted by Mr. Moshage, rather than advising GREGORY KINSMAN that he

11

was terminating his relation with CHEMTREAT he simply advised that he was going to obtain competitive quotes from CHEMTREAT competitors. (Moshage dep. pg. 14). It was at a subsequent service call by GREGORY KINSMAN that the referral to RHEMA was made. (Moshage dep. pg. 14). Moshage confirmed that CHEMTREAT continued as a supplier for Carus Chemical Company and would do so until such time as a determination that better pricing from elsewhere could be had. (Moshage dep. pg. 32). In fact, GREGORY KINSMAN has testified that Carus remained a customer of CHEMTREAT even as of the date of his deposition (G. Kinsman dep. pg. 128) and Tom Moshage testified that GREGORY KINSMAN continued as his Carus sales rep right up to the time that he was terminated in October 2005. (Moshage dep. pg. 22-24).

The foregoing testimony clearly establishes that Carus Chemical Company had not abandoned CHEMTREAT as a supplier but rather, was merely considering obtaining competitive quotes to see if better pricing could be had. As such, the business relationship had not terminated and was ongoing at the time that GREGORY KINSMAN introduced them to a competitor with which he had a direct financial interest. As the following establishes the testimony is consistent with a number of the diverted customers:

   a.    **National Manufacturing** - National Manufacturing had two facilitates which were supplied by CHEMTREAT - only one of which made a determination to cease doing business with CHEMTREAT. (G. Kinsman dep. 112-113).

   b.    **Monmouth College** - Like Carus Chemical Company, Monmouth College merely advised GREGORY KINSMAN that they were searching for bids. GREGORY KINSMAN was invited to re-bid but instead directed the business to RHEMA. (G. Kinsman dep. pg. 116-118).

   c.    **Bob Evans Farm** - Also like Carus Chemical Company, GREGORY KINSMAN was simply advised that they would be seeking competitive bids to try to find a lower price. (G. Kinsman dep. pg. 121).

There is a clear distinction between a customer which desires to obtain competitive quotes in order to *consider* terminating the business relationship with a supplier, and a customer that has already selected another supplier and terminated the relationship. The evidence in the present case merely establishes the former and conclusively establishes an ongoing business relationship.

With respect to the Defendant's knowledge of the ongoing relationship, that has been clearly established. The foregoing evidence which establishes the ongoing relationships comes primarily from the mouth of GREGORY KINSMAN. As such, it is inarguable that he was aware of the relationship.

With respect to the "purposeful interference" element of such a cause of action, Defendant's Response does little to rebut that which has previously been presented to the Court. Illinois case law is clear that the element of "purposeful" or "intentional" interference refers merely to some impropriety committed by the defendant in interfering with the plaintiff's valid business relationship with an identifiable third party. Romanic v. Connelly, 324 Ill.App.3d 393, 406 (1st Dist. 2001). Taking into consideration GREGORY KINSMAN'S contractual, common law and fiduciary obligations to CHEMTREAT, it is inarguable that his conduct was improper - irrespective of whether or not it is characterized as "directing" or "diverting" those customers. This fact is best established through GREGORY KINSMAN himself when addressing his decision to refer Monmouth College to his wife instead of re-bidding it.

Q.      So in order to re-bid this you could have theoretically dropped your profit margin to 40, 45%? You could have cut the profit margin in half to give a lower price, correct?

A.      Could have.

13

Q.      But instead of doing that you directed them to your wife's competing business; is that correct?

A.      Correct.

…

Q.      And you were aware at the time that your wife could undercut your price?

A.      That she could undercut my price?

Q.      Yes.

A.      Yes.
(G. Kinsman dep. Pg 118, 122)

Finally, Defendant contends that Plaintiff has not established the necessary element that the conduct of GREGORY KINSMAN has caused damages. Initially, it should be noted that Plaintiff's Motion for Summary Judgment is directed only at the issue of liability and requests a further hearing on the issue of damages. Even so, the record establishes that some damages have resulted.

Defendant correctly points out that there must be a causal relationship between the loss of sales to CHEMTREAT and the conduct of GREGORY KINSMAN. However, Defendant fails to point to any evidence which creates a question of fact on this issue. To the contrary Plaintiff has submitted an affidavit of Randy Azzarello, President of CHEMTREAT, to the effect that the sales of product to Carus Chemical Company have dropped dramatically and that that reduction coincided with the startup of RHEMA. (Ex. 7). Additionally, the deposition of Tom Moshage sufficiently establishes this necessary element. Tom Moshage testified that he would stay with a supplier until a lower price came along and that the competitive bid from RHEMA was the only current bid that he had at the time that he decided to stop purchasing those chemicals from CHEMTREAT. (Moshage dep. pg. 29, 31). Indeed, it is the only competitive bid that he has seen

in the last two years. (Moshage dep. pg. 32-33). Consequently, but-for the improper involvement of GREGORY KINSMAN Carus Chemical Company would not have had any competitive quotes and would have presumably continued to purchase those products from CHEMTREAT.

Based upon the foregoing, it is respectfully submitted that Plaintiff has conclusively established each and every element of an intentional interference with business relationship cause of action and Defendant has wholly failed to present any competent evidence to create a material question of fact for trial. As such, summary judgment in favor of Plaintiff on the issue of liability is appropriate.

### COUNTS III AND IV

Counts III and IV of Plaintiff's Complaint are causes of action against GREGORY KINSMAN alleging that he breached his fiduciary obligations as an employee of CHEMTREAT. In that regard, Plaintiff cited to the law of Illinois pertaining to the extent of the fiduciary obligation owed by an employee to his employer as set forth in Mulaney, Wells & Company v. Savage, 78 Ill.2d 534 (1980) and Lawter International, Inc. v. Carroll, 116 Ill.App.3d 717 (1st Dist. 1983). Defendant's Response does nothing more than distinguish that applicable fiduciary duty to the fiduciary duty owed to a corporation by its officers and/or directors. However, nowhere in that Response is it suggested that Plaintiff has inaccurately described the fiduciary duty of an employee to its employer or that it has misapplied that applicable law to the facts of this case.

The fiduciary duty of an employee to his employer is to act solely for the employer in all matters related to the employment and to refrain from competing with the employer. Mulaney, Wells & Company v. Savage, 78 Ill.2d 534 (1980). Plaintiff's Motion has set forth the evidence

which establishes Defendant's breach of this fiduciary obligation. Defendant's Response in no way challenges that evidence and thus, no further reply is necessary.

## COUNT V

Count V is an action seeking injunctive relief consistent with the post employment covenant not to compete which is a part of GREGORY KINSMAN'S applicable Employment Contract. The relief sought includes not only an injunction against GREGORY KINSMAN but also, against his wife and/or RHEMA. Defendants do not challenge that the relief against GREGORY KINSMAN is appropriate and have conceded that aspect of the cause of action. However, Defendants contend that the injunctive relieve against MICHELLE KINSMAN would be inappropriate.

Contrary to Defendants' assertions, MICHELLE KINSMAN did not obtain customers for RHEMA by making contact with them. Rather, it has been readily acknowledged by MICHELLE KINSMAN that she did not make cold calls on any potential customers and has never met the representatives of any of her RHEMA customers. (M. Kinsman dep. pg. 17-18, 30-35). She further acknowledged that all customers of RHEMA are the result of referrals made by her husband during the course of his employment with CHEMTREAT. (M. Kinsman dep. pg. 16-17, 20). Although MICHELLE KINSMAN does have a business background, it is undisputed that she has absolutely no experience in the water treatment chemical business (M. Kinsman dep. pg. 5-8, 51) - a business which GREGORY KINSMAN testified requires one to two years of training and experience in which to understand the needs of customers. Within this context, it is indisputable that MICHELLE KINSMAN'S sole ownership of RHEMA is nothing more than a transparent attempt by GREGORY KINSMAN to financially benefit from ongoing competition with CHEMTREAT in violation of his post employment covenant not to compete.

Illinois law recognizes that attempts to circumvent restrictive covenants may, in some cases, justify restraints on non parties to the covenants. <u>Medtronic, Inc. v. Benda</u>, 689 F.2d 645, 658 (7th Cir. 1982), citing <u>Arwell Division of Orkin Exterminating Company v. Kendrick</u>, 131 Ill.App.2d 632 (3rd Dist. 1971). In <u>Arwell</u> the defendant, John Kendrick, was subject to a covenant not to compete which was contained in his employment contract with Orkin. Following his termination of employment his wife, Marguerite, established an exterminating business within the geographic region prohibited under the terms of the restrictive covenant. The employer brought suit to enforce the restrictive covenant. In response, defendants claimed that the restrictive covenant was not enforceable against Marguerite Kendrick as she was a stranger to the employment contract. The Court agreed that Marguerite Kendrick was a stranger to the contract but, due to the fact that *"she was not a stranger to the transactions and events from which it may be inferred that she knowingly participated in the evasion or violation of the restrictive covenant"*, it was appropriate to enjoin her from further involvement in the exterminating business. <u>Arwell</u>, 131 Ill.App.3d at 633.

Likewise, the only reasonable inference from the evidence in this case is that MICHELLE KINSMAN is nothing more than an alter ego of GREGORY KINSMAN for the operation of this competing chemical business and thus, under the principles of equity it is appropriate to enjoin all Defendants.

## <u>COUNTS VI AND VII</u>

Counts VI and VII of Plaintiff's Complaint are claims for money damages against MICHELLE KINSMAN and RHEMA, respectively, for intentionally interfering with the Employment Contract between GREGORY KINSMAN and CHEMTREAT. Defendants' have apparently misconstrued the nature of these claims. In response, Defendants suggest that these

are identical claims to Count II wherein it is alleged that GREGORY KINSMAN intentionally interfered with the business relationship between CHEMTREAT and its customers. Addressing that issue, Defendant restricts its response to a suggestion that MICHELLE KINSMAN was acting under the belief that the business relationship between CHEMTREAT and its customers had previously terminated. Although disputed, that is entirely irrelevant to the claims set forth in Counts VI and VII that she and/or RHEMA intentionally interfered with the Employment Contract between her husband and CHEMTREAT.

As previously set forth, the Employment Agreement included provisions requiring exclusive time and effort on behalf of the employer, the non disclosure of proprietary information and the post employment covenant not to compete. Evidence to the effect that MICHELLE KINSMAN, either individually or acting as the sole member of RHEMA, assisted her husband in breaching any of these provisions of the contract is sufficient to establish liability under Counts VI and VII. Due to the fact that Defendant has not challenged the evidence set forth in Plaintiff's Motion for Summary Judgment no further reply is necessary.

## COUNTS VIII - X

Counts VIII - X are Counts against MICHELLE KINSMAN and/or RHEMA for aiding and abetting the tortious conduct undertaken by GREGORY KINSMAN as alleged in Count II (interference with business relationships) and Count III (breach of fiduciary duty). As previously set forth, the elements necessary to establish aiding and abetting include,

1. The party whom the defendant aids must perform a wrongful act which causes an injury;

2. Defendant must be regualry aware of his role as part of the overall or tortious activity at the time that he provides the assistance;

3. The defendant must knowingly and substantially the principle violation.

18

<u>Thornwood, Inc. v. Jenner & Block</u>, 344 Ill.App.3d 15, 27-28 (1st Dist. 2003);
Restatement (Second) of Torts §§ 876

Defendant's Response goes into great detail establishing that there is a knowledge element of such a cause of action, which is not in dispute. Otherwise, the Response simply claims that the knowledge element has not been met in that MICHELLE KINSMAN supposedly was unaware that the customers being directed to her attention by her husband were still customers of CHEMTREAT.

As has been previously established in this Reply, GREGORY KINSMAN was well aware that each of the customers which he was referring to RHEMA were still customers of CHEMTREAT, albeit customers who were seeking competitive quotes to possibly go with another supplier. For the sake of brevity, the overwhelming evidence in that regard will not be reiterated with respect to Counts VIII – X. Suffice it to say, that the record establishes that MICHELLE KINSMAN was equally as aware that the price quotes she was giving were to current customers of CHEMTREAT who were *merely considering* going with another supplier. For instance, the written quote provided to CHEMTREAT on March 12, 2004 specifically identifies CHEMTREAT as the "current supplier". If indeed this document was prepared solely by MICHELLE KINSMAN with no assistance from GREGORY KINSMAN then it must be viewed as an acknowledgment on her part that she was fully aware of the current relationship between Carus Chemical Company and CHEMTREAT.

Additionally, the evidence establishes that GREGORY KINSMAN continued to call upon Carus Chemical Company as a Chemtreat sales representative right up to the date of his termination by CHEMTREAT. It is inconceivable that MICHELLE KINSMAN had no knowledge of that fact during the eighteen months that RHEMA sold products to Carus.

MICHELLE KINSMAN, having engaged in a scheme with her husband to create an alter ego for the purpose of competing with CHEMTREAT and then proceeding to competitively bid against CHEMTREAT (the *current supplier*) - which was continuing to pay her husband a full-time salary - sufficiently establishes that she knowingly assisted her husband's interference with CHEMTREAT'S business relationships and breach of his fiduciary duty owed to CHEMTREAT.

As is a recurring theme throughout this case, Defendants' mere denials as to certain facts which have clearly been established of record in this case are insufficient to create a triable issue of fact. Consequently, it is respectfully submitted that Plaintiff is entitled to summary judgment as to Counts VII, IX and X of the Complaint.

## III.

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that Defendants have wholly failed to present specific evidence which demonstrates that a genuine issue for trial exists. Consequently, Plaintiff, CHEMTREAT, INC., prays that summary judgment be entered in its favor as to each Count of the Complaint and for such other and further relief as this Court deems just and reasonable.

CASSIDY & MUELLER


By: s/  Andrew D. CASSIDY
　　　　　Attorneys for the Plaintiff,
　　　　　CHEMTREAT, INC., a Virginia corporation


Andrew D. Cassidy
CASSIDY & MUELLER
416 Main Street, Ste. 323
Peoria, Illinois 61602
309/676-0591

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2006 I electronically filed the foregoing Plaintiff's Reply to Defendants' Response to Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. J. Kevin Wolfe          jkwolfe@hslaw.us

s/_____ ANDREW D. CASSIDY_____
CASSIDY & MUELLER
416 Main Street, Suite 323
Peoria, IL 61602
Telephone: 309/676-0591
Fax: 309/676-8036
E-mail: dcassidy@cassidymueller.com